735 S.E.2d 492

**STORM M.H., a minor, by her parent, Gayla S.L. McSWAIN, and Gayla S.L. McSwain, pro se, Respondents/Appellants,**

v.

**CHARLESTON COUNTY BOARD OF TRUSTEES and Nancy J. McGinley, in her official capacity as Superintendent of Charleston County School District, Appellants/Respondents.**

No. 27201.

Supreme Court of South Carolina.

Heard Oct. 19, 2011.

Decided Dec. 12, 2012.

480

Kenneth L. Childs, John M. Reagle, Tyler R. Turner, all of Childs & Halligan, of Columbia, for Appellants–Respondents.

Gayla S.L. McSwain, of Goose Creek, pro se Respondents–Appellants.

Chief Justice TOAL.

In this declaratory judgment action, the parties appeal the circuit court's order authorizing Storm M.H. ("Student"), who resides in Berkeley County, to enroll in the Academic Magnet High School ("AMHS") located in the Charleston County School District ("CCSD") provided she purchase real property in the CCSD with a tax-assessed value of $300 or more. We affirm the order of the circuit court.

### FACTUAL/PROCEDURAL BACKGROUND

AMHS is a countywide, taxpayer-funded school located in the CCSD. It is a "top ten," nationally-recognized magnet high school.[1] In terms of admission requirements, the AMHS brochure/application states that "Students must be residents of Charleston County and complete an AMHS application."

Student resides with her parents in Berkeley County, South Carolina. In January 2010, Student applied for admission to the 9th grade class at the AMHS for the academic year beginning on August 18, 2010. In her application, Student

---

1. The following definition is instructive:

    A Magnet school is part of the public school system. Usually students are zoned into their schools based on location. Students mostly go to the school which they are closest to (this may not always be true since boundaries can seem arbitrary). With Magnet schools, the public school system has created schools that exist outside of zoned school boundaries. The point of them is that they usually have something special to offer over a regular school which makes attending them an attractive choice to many students, thereby increasing the diversity of the student population within them (in theory). Grace Chen, "What is a Magnet School?" (December 4, 2007), available at http://www.publicschoolreview.com/articles/2.

identified her Berkeley County address. Student was accepted by the AMHS on January 20, 2010, and required to confirm her intention to enroll by January 28, 2010. The Confirmation Form requested a "Charleston County Residence Address." After seeing this request, Student's mother, Gayla S.L. McSwain ("Parent"), spoke with someone at the AMHS and explained that Student could not provide a Charleston County address because she did not "live in Charleston County yet." As a result of this conversation, Parent completed the Confirmation Form by indicating that she would "provide [a Charleston County residence address] prior to enrollment."

Beginning in March 2010, Parent exchanged e-mails with John Emerson, the General Counsel for CCSD, regarding CCSD's policies for nonresident students.[2] Specifically, Parent inquired whether these policies required her to relocate the family to Charleston County in order for Student to attend the AMHS.

In his initial response, Emerson emphasized the "clear notification" that the AMHS is for Charleston County residents. However, Emerson appeared to concur in Parent's interpretation that section 59–63–30[3] of the South Carolina Code would permit Student to attend the AMHS without

---

2. The primary policy, which is entitled "Policy JFAB Nonresident Students," provides that its purpose is "[t]o establish guidelines for admitting to Charleston County School District schools those students who do not reside in the district." The policy also states, "Nonresident students may not attend magnet schools/programs."

3. Section 59–63–30 provides:

   Children within the ages prescribed by § 59–63–20 shall be entitled to attend the public schools of any school district, without charge, only if qualified under the following provisions of this section:
   (a) Such child resides with its parent or legal guardian;
   (b) The parent or legal guardian, with whom the child resides, is a resident of such school district; or
   (c) The child owns real estate in the district having an assessed value of three hundred dollars or more; and
   (d) The child has maintained a satisfactory scholastic record in accordance with scholastic standards of achievement prescribed by the trustees pursuant to § 59–19–90; and
   (e) The child has not been guilty of infraction of the rules of conduct promulgated by the trustees of such school district pursuant to § 59–19–90.

   S.C.Code Ann. § 59–63–30 (2004).

charge if she purchased property in Charleston County with a tax-assessed value of $300 or greater. Additionally, Emerson acknowledged that section 59–63–490[4] would permit Student to attend the AMHS if she would be better accommodated by the adjoining CCSD; however, he clarified that Student's enrollment at the AMHS would be contingent upon the consent of the BCSD's Board of Trustees and the CCSD's Board of Trustees. Finally, concerning Parent's inquiry as to whether she could "pay the difference in cost per pupil between the two districts" rather than change her family's residence, Emerson simply cited section 59–63–45,[5] which provides a formula for these payments.

In a subsequent e-mail on May 5, 2010, Parent referenced the prior e-mail exchange and questioned whether she was required to sign an affidavit prior to registration attesting that Student was a Charleston County resident. Emerson responded by e-mail, stating, "Once you either buy land in your daughter's name or get consent from both boards, you won't have to sign it. Until then you do not have the requirements to be admitted without the affidavit. One of those things has to happen first."

On May 11, 2010, Parent wrote to Nancy J. McGinley, the Superintendent of CCSD, requesting the CCSD's Board of Directors consent to Student attending the AMHS pursuant to section 59–63–490. According to Parent, McGinley called her two weeks later to inform her that the AMHS is reserved for Charleston County residents.

On June 7, 2010, Emerson wrote to Parent instructing her that Student could not be "admitted to the Academic Magnet

---

4. Section 59–63–490 provides:

When it shall so happen that any person is so situated as to be better accommodated at the school of an adjoining school district, whether special or otherwise, the board of trustees of the school district in which such person resides may, with the consent of the board of trustees of the school district in which such school is located, transfer such person for education to the school district in which such school is located, and the trustees of the school district in which the school is located shall receive such person into the school as though he resided within the district.

S.C.Code Ann. § 59–63–490 (2004).

5. S.C.Code Ann. § 59–63–45(A) (2004).

unless she actually resides in Charleston County, in compliance with 59–63–30(a)–(b)."

On June 14, 2010, the CCSD Board of Trustees conducted a meeting in which it discussed numerous agenda items, including an "Academic Magnet Student Appeal." By letter dated June 16, 2010, Emerson informed Parent that the Board "voted unanimously in open session to admit [Student] to the AMHS if [her] family establishes 'residence and domicile' in Charleston County before school starts."

On June 27, 2010, Parent, on behalf of Student, filed a declaratory judgment action[6] against the CCSD Board and McGinley for the circuit court to determine whether Parent had to establish the family's domicile and residence in Charleston County prior to August 18, 2010, the start of the academic year at the AMHS. The next day, Parent filed a Petition to Appeal the CCSD's directive with the Board of Trustees.[7]

In the declaratory judgment Complaint, Parent disputed the residency requirement, arguing that Student was entitled to enroll in the AMHS if any of the following conditions were satisfied: (1) Parent paid tuition to the CCSD; (2) Student purchased real estate in Charleston County valued at $300 or more pursuant to section 59–63–30(c); or (3) Student's education would best be accommodated by the AMHS pursuant to section 59–63–490. Because she believed the Board's directive constituted a final decision, Parent asserted that she did not have to exhaust administrative remedies as any hearing before the CCSD would be "futile."

The Board and McGinley (the "Board") moved to dismiss the declaratory judgment action, arguing Parent did not state a cause of action and the circuit court did not have subject matter jurisdiction as the Board had not entered a final, appealable order. In the alternative, the Board requested the court decline to exercise jurisdiction on the ground Parent failed to exhaust all administrative remedies.

6. S.C.Code Ann. § 15–53–20 (2005).

7. S.C.Code Ann. §§ 59–19–510 to –560 (2004).

After conducting a hearing on July 19 and 22, 2010, the circuit court issued an order on July 28, 2010. Initially, the court found that it had subject matter jurisdiction to declare Parent's rights under section 59–63–30, but not section 59–63–490. In so ruling, the court found that a final order by the Board was not a prerequisite to Parent obtaining a declaratory judgment. Because the Board had never addressed Parent's reliance on section 59–63–30, i.e., whether payment of tuition or purchase of real property in Charleston County was sufficient for Student to enroll in the AMHS, the court explained that the Board "could not have issued a final 'order' regarding 59–63–30."

In addition, the court rejected the Board's contentions that Parent failed to state a cause of action or exhaust her administrative remedies. Specifically, the court found Parent had presented a justiciable controversy that required a "speedy resolution" due to Student's impending enrollment date. Because Parent had not requested a Board decision with respect to the provisions of section 59–63–30, the court concluded that Parent did not have to exhaust administrative remedies in order to obtain a ruling in the circuit court.

Regarding Parent's claim under section 59–63–490, the court found it did not have jurisdiction because Parent had appealed the Board's decision to the circuit court;[8] thus, the court concluded that it "now has appellate jurisdiction only to review that decision and cannot exercise original jurisdiction to declare Plaintiffs' rights under 59–63–490."

With respect to the merits of Parent's claim, the court held that the CCSD's policy of requiring domicile for a child to attend a CCSD magnet school violates section 59–63–30(c) "because domicile by a child and that child's parent or guardian is not required by the statute, only property ownership is required."

Based on this ruling, the court rejected Parent's contention that, because Student had already been admitted to the AMHS, she should be allowed to pay tuition under section 59–63–30 rather than buy the requisite property in the CCSD.

---

8. On July 21, 2010, Parent appealed the Board of Trustees' decision denying Student's transfer under section 59–63–490 to the circuit court in its appellate capacity.

Although the court acknowledged that a nonresident child could pay tuition to attend school in a particular attendance zone within the CCSD, the court stated that the Board is authorized, via section 59–19–90(9), to choose in which school the child may enroll. The court emphasized that "a nonresident child who wants to be statutorily entitled to enroll at a magnet school must meet one of the residency requirements of 59–63–30."

Finally, the court summarily dismissed Parent's claim that the Board's application of its policy requiring domicile as a prerequisite to an eligible nonresident student violated the equal protection clause.

Both parties appealed the circuit court's order to the court of appeals. Subsequently, Student purchased real property in Charleston County and enrolled in the AMHS on August 18, 2010, as the circuit court lifted the automatic stay of its order.[9] The court of appeals denied the Board's petition to revoke the order lifting the automatic stay. This Court certified this appeal pursuant to Rule 204(b) of the South Carolina Appellate Court Rules.

## LAW/ANALYSIS

### A. Exhaustion of Administrative Remedies

As a threshold issue, the Board contends the circuit court erred in ruling on Parent's declaratory judgment action. Specifically, the Board claims the circuit court did not have jurisdiction over the school board action as it arose under a statutory scheme that provides for administrative appellate review. Because the Board of Trustees did not issue a final order regarding Student's enrollment at the AMHS, the Board asserts the circuit court lacked subject matter jurisdiction over Parent's claim for declaratory relief. Even if the circuit court had subject matter jurisdiction, the Board avers the circuit court abused its discretion in exercising jurisdiction given Parent failed to exhaust her administrative remedies prior to instituting the proceedings in circuit court.

██ Initially, we note that the Board incorrectly characterizes its claim as one involving subject matter jurisdiction.

---

9. S.C.Code Ann. § 18–9–220 (Supp.2010); Rule 241, SCACR.

As this Court has explained, "[t]he doctrine of exhaustion of administrative remedies is generally considered a rule of policy, convenience and discretion, rather than one of law, and is not jurisdictional." *Ward v. State,* 343 S.C. 14, 17 n. 5, 538 S.E.2d 245, 246 n. 5 (2000) (citations omitted). In contrast, "subject matter jurisdiction is the power to hear and determine cases of the general class to which the proceedings in question belong." *Id.* "Thus, the failure to exhaust administrative remedies goes to the prematurity of a case, not subject matter jurisdiction." *Id.*

"Whether administrative remedies must be exhausted is a matter within the trial judge's sound discretion and his decision will not be disturbed on appeal absent an abuse thereof." *Hyde v. S.C. Dep't of Mental Health,* 314 S.C. 207, 208, 442 S.E.2d 582, 582–83 (1994). "The general rule is that administrative remedies must be exhausted absent circumstances supporting an exception to application of the general rule." *Id.* at 208, 442 S.E.2d at 583. "A commonly recognized exception to the requirement of exhaustion of administrative remedies exists when a party demonstrates that pursuit of administrative remedies would be a vain or futile act." *Brown v. James,* 389 S.C. 41, 54, 697 S.E.2d 604, 611 (Ct.App.2010).

Notwithstanding the alleged procedural problems, we have chosen to address the merits of the parties' appeals for several reasons. First, we find that it would have been futile for Parent to exhaust her administrative remedies as the Board's decision was certain to be unfavorable. Secondly, we believe the administrative remedies would have been inadequate given the immediacy of Student's enrollment date and the potential delay of an administrative appeal. Finally, we find the instant case presents issues of important public interest and a resolution would promote judicial economy. *See Cabiness v. Town of James Island,* 393 S.C. 176, 712 S.E.2d 416 (2011) (addressing issues in the interest of judicial economy to supply a sufficient analytical framework for future cases); *Curtis v. State,* 345 S.C. 557, 549 S.E.2d 591 (2001) (recognizing that an appellate court may decide questions of imperative and manifest urgency to establish a rule for future conduct in matters of important public interest).

### B. Board—Imposed Physical Residency Requirement for Magnet School

██ The Board asserts the circuit court erred in determining that the Board's policy of requiring residency in Charleston County for admission to the CCSD's magnet schools violates section 59–63–30 of the South Carolina Code. In support of this assertion, the Board claims the court not only misinterpreted section 59–63–30, but also failed to appreciate the Board's authority under section 59–19–90(9), which authorizes a board of trustees to transfer and assign students to a particular school, to determine which particular school a child will attend and to establish the appropriate admission criteria for a particular school. S.C.Code Ann. § 59–19–90(9) (2004).

In her cross-appeal, Parent also challenges the circuit court's construction of sections 59–63–30 and 59–19–90. Parent contends these statutes entitle a child to attend a public school, without charge, if the child either resides or owns real estate within the school district in which the school is located. However, if the child does not meet either of these qualifications, Parent claims the nonresident child may pay tuition so as to be eligible to enroll in a particular school within the school district.

██ "The cardinal rule of statutory construction is to ascertain and effectuate the intent of the legislature." *Media Gen. Commc'ns, Inc. v. S.C. Dep't of Revenue*, 388 S.C. 138, 147–48, 694 S.E.2d 525, 529 (2010) (quoting *Charleston Cnty. Sch. Dist. v. State Budget & Control Bd.*, 313 S.C. 1, 5, 437 S.E.2d 6, 8 (1993)). Where the statute's language is plain, unambiguous, and conveys a clear, definite meaning, the rules of statutory interpretation are not needed and the court has no right to impose another meaning. *Gay v. Ariail*, 381 S.C. 341, 345, 673 S.E.2d 418, 420 (2009).

Section 59–19–90 provides in relevant part:

The board of trustees shall also:

. . . .

(9) Transfer and assign pupils. Transfer any pupil from one school to another so as to promote the best interests of education, and *determine the school within its district in which any pupil shall enroll.*

(10) Prescribe conditions and charges for attendance. Be empowered *to prescribe conditions* and a schedule of charges based on cost per pupil as last determined, for attendance in public schools of the school district for

. . . .

(d) all other children specially situated and not meeting the eligibility requirements of § 59–63–30, but who shall have petitioned the trustees in writing seeking permission to attend the public schools of the school district.

S.C.Code Ann. § 59–19–90(9), (10)(d) (2004) (emphasis added).

■ In construing the language of this section, we agree with the Board that the General Assembly conferred discretionary authority on a board of trustees to set attendance criteria for particular schools and to determine which school in its district a student may attend. *Cf. Stewart v. Charleston Cnty. Sch. Dist.*, 386 S.C. 373, 688 S.E.2d 579 (Ct.App.2009) (concluding CCSD had ultimate authority to set attendance guidelines for magnet school). Here, the Board initially determined that Student would be assigned to AMHS. This was the 59–19–90(9) decision.

However, the Board's subsequent attempt to rescind that decision is unavailing because, in making its decision, the Board relied on the unlawful policy purporting to mandate Charleston County residency as a requirement for acceptance at AMHS. This "resident only" criterion runs afoul of section 59–63–30 because any child meeting the threshold established by this provision, either as a resident or a property owner of the subject school district, is entitled to attend that district's schools. Thus, while we agree with the Board that section 59–63–30 does not necessarily confer a child the right to attend a particular school within a school district, CCSD may not utilize this provision to revoke admission to a child qualifying to attend a district's school merely because a child qualifies to attend school in the district by virtue of property ownership rather than residence under the auspices of exercising its section 59–19–90(9) right to transfer and assign children to a particular school.

By its plain terms, section 59–63–30 entitles a child to attend the public schools of any school district if the child: (1) resides with his or her parent or legal guardian, and that

parent or legal guardian is a resident of the school district *or* the child owns real estate in the district having an assessed value of at least three hundred dollars; and (2) the child has maintained a satisfactory scholastic record and not been guilty of infraction of the rules of conduct.

A school district may impose admissions requirements for its schools, including magnet schools. However, in considering eligible applicants, a school board may not distinguish between a child who qualifies to attend its schools as a resident under section 59–63–30(a) & (b) and a child who qualifies to attend its schools as a property owner under section 59–63–30(c). We disagree with the Board that a judicial determination that Student is entitled to *enroll* at AMHS usurps its authority to *transfer or assign* students under section 59–19–90(9). CCSD employs a merit-based selection process for AMHS, accepting only those children who demonstrate exceptional academic ability. Just as the Board could not ignore the merit-based selection process and transfer or assign a resident child to AMHS, the Board cannot ignore the merit-based process when revoking a child's admission just because the child qualifies to attend CCSD schools as a property owner.

The Board alternatively argues that its authority to set admissions requirements to its magnet schools includes the authority to create physical residency requirements, citing *Stewart v. Charleston County School District*, 386 S.C. 373, 688 S.E.2d 579 (Ct.App.2009). That case involved the Buist Academy, an academic magnet school in Charleston County serving intellectually gifted students of primary and elementary school age. *Id.* at 377, 688 S.E.2d at 581. In 1967, the General Assembly passed local legislation consolidating Charleston County's eight school districts under the umbrella of one unified school district, CCSD. *Id.* at 376–77, 688 S.E.2d at 581. The eight individual districts remained in existence as constituent districts of CCSD, and Buist Academy is located in constituent District 20. *Id.* District 20 used a lottery system to select the students who would be tested for a determination of whether they met the academic requirements for admission. *Id.* Available openings were prioritized as follows: one-fourth of open seats were reserved for children residing in District 20, one-fourth for siblings of Buist Academy students, one-

fourth for children who would otherwise attend low performing schools, and one-fourth for children county-wide. *Id.* In 2006, District 20 adopted a motion giving priority for all open seats at Buist Academy to qualified children residing in District 20, essentially closing its doors to children residing outside of District 20 but in Charleston County. *Id.* CCSD refused to recognize the motion, and each party claimed it had the authority to set attendance guidelines for the school. *Id.* The court of appeals evaluated the local legislation that created CCSD and found that CCSD possessed the authority to " 'provide for intellectually gifted children a program which shall challenge their talents.' " *Id.* at 379, 688 S.E.2d at 582 (quoting Act No. 340, § 5(8), 1967 S.C. Acts 470). In finding that District 20 could not reserve all openings for residents of its district, the court stated, "Placing all emphasis on the physical location of a school such as Buist Academy would permit a constituent school district to monopolize a countywide magnet school to the exclusion of all other students in the county." *Id.* The court of appeals concluded such a result was contrary to legislative intent. *Id.*

The Board argues that because *Stewart* recognized its authority to prioritize available openings based on a child's physical location, it may establish an attendance requirement for its magnet schools—that children must reside in the county. We disagree that this is the import of *Stewart.* *Stewart* did not implicate non-resident students, and therefore, section 59–63–30 was not at issue. This is not an inconsequential distinction. Section 59–63–30 places a child who owns county property on the same footing as a child who resides in the county. Just as District 20 could not monopolize the county-wide magnet school for its own residents in *Stewart,* CCSD cannot monopolize its magnet schools for county residents when section 59–63–30 recognizes property owners as eligible to attend its schools. The Board can most certainly set admissions requirements for its magnet schools and even set geographic priority for available seats. What it cannot do is exclude an entire segment of students recognized under the statute as qualified to attend its schools.

In light of our view that CCSD's policy of excluding all non-resident children from attendance at its magnet schools is contrary to the plain language of section 59–63–30,

Student is entitled to continue attending AMHS. Student qualified for consideration by AMHS as a property owner and she met or exceeded AMHS's admissions requirements. Importantly, AMHS accepted her application for admission with the understanding that she would take up residence or buy property in Charleston County prior to enrollment. We are not unsympathetic to the Board's argument that allowing non-resident children to attend its magnet schools displaces other qualified resident children. However, we are constrained to interpret the unambiguous language of section 59–63–30. Thus, a child who owns real estate in the district having an assessed value of three hundred dollars or more is entitled to attend that district's schools, just as a resident child. If this interpretation is contrary to legislative intent, or if it does not promote the furtherance of education, we leave it to the legislature to amend the statute. As the statute is written, however, the Board does not have the authority to unilaterally exclude children who qualify to attend its schools under section 59–63–30.[10]

In view of our interpretation of sections 59–63–30 and 59–19–90, we reject Parent's contention that the mere payment of tuition is sufficient to deem a nonresident child eligible to enroll in a particular school in another district. Instead, the payment of tuition is a secondary requirement that may be imposed after a nonresident child, who is statutorily eligible to attend the public schools of another school district, is granted admission to a particular school. In the

---

10. Our holding today is based on a plain reading of section 59–63–30. Therefore, we decline to reach Parent's alternative argument that the resident/property owner distinction employed by the Board violates the equal protection clause of the South Carolina Constitution. *See Arnold v. Ass'n of Citadel Men*, 337 S.C. 265, 275, 523 S.E.2d 757, 762 (1999) ("This Court will decline to rule on constitutional questions unless the determination is essential to the disposition of a case." (citing *Heyward v. S.C. Tax Comm'n*, 240 S.C. 347, 126 S.E.2d 15 (1962))); *cf. Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 347, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandeis, J., concurring) ("The Court will not pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of. This rule has found most varied application. Thus, if a case can be decided on either of two grounds, one involving a constitutional question, the other a question of statutory construction or general law, the Court will decide only the latter.").

event that occurs, the school district may require the nonresident child's parent or legal guardian to reimburse the district for the assessed costs of educating that child to the extent that child's property taxes do not cover such costs. S.C.Code Ann. § 59–63–45(A) ("Notwithstanding the provisions of this chapter, a nonresident child otherwise meeting the enrollment requirements of this chapter may attend a school in a school district which he is otherwise qualified to attend if the person responsible for educating the child pays an amount equal to the prior year's local revenue per child raised by the millage levied for school district operations and debt service reduced by school taxes on real property owned by the child paid to the school district in which he is enrolled. The district may waive all or a portion of the payment required by this section.").[11]

## C. Automatic Stay

Finally, the Board contends the circuit court erred in lifting the automatic stay of its order as it authorized Student to attend the AMHS during the pendency of this appeal.

We need not address this issue because, under our construction of the statute, Student may continue her enrollment at the AMHS.

### CONCLUSION

Based on the foregoing, we affirm the order of the circuit court granting declaratory judgment in favor of Parent. *See Garris v. Governing Bd. of S.C. Reinsurance Facility*, 319 S.C. 388, 390, 461 S.E.2d 819, 821 (1995) ("The decision to grant a declaratory judgment is a matter which rests in the sound discretion of the trial court and will not be disturbed absent a clear showing of abuse.").

**AFFIRMED.**

---

11. Although we are cognizant of the conflict between the "without charge" language in section 59–63–30 and the provisions of section 59–63–45 that require reimbursement for a child attending another school district, we believe section 59–63–45 is controlling as it was enacted in 1996, thirty-four years after section 59–63–30. *See Williams v. Town of Hilton Head*, 311 S.C. 417, 429 S.E.2d 802 (1993) (recognizing that where it is not possible to harmonize two statutes, the later legislation supersedes the earlier enactment).

494

KITTREDGE and HEARN, JJ., concur.

PLEICONES, J., dissenting in a separate opinion.

BEATTY, J., dissenting in a separate opinion.

Justice PLEICONES, dissenting.

I respectfully dissent.

## I. Exhaustion of Administrative Remedies

Although in my view Parent likely failed to exhaust her administrative remedies, I would not disturb the circuit court's finding on this issue. *See Hyde v. S.C. Dep't of Mental Health,* 314 S.C. 207, 208, 442 S.E.2d 582, 582–83 (1994) (whether administrative remedies must be exhausted is a matter within the sound discretion of the trial court). Nevertheless, I address this point because I disagree with the majority's analysis.

For urgency to constitute an exception to the requirement that a party exhaust her administrative remedies, she must show that the injury threatened is irreparable. *See* 2 Am. Jur.2d *Administrative Law* § 478 (2012). Futility is an exception when the administrative body cannot provide the relief requested or when circumstances guarantee a negative result of appeal. *See Ward v. State,* 343 S.C. 14, 18–19, 538 S.E.2d 245, 247 (2000) ("Allowing ALJs to rule on the constitutionality of the statute would violate the separation of powers doctrine.... Requiring a party to go before an agency or ALJ who cannot rule on the constitutionality of a statute would be a futile act."); *Law v. South Carolina Dept. of Corrections,* 368 S.C. 424, 438, 629 S.E.2d 642, 650 (2006) ("Futility, however, must be demonstrated by a showing comparable to the administrative agency taking a hard and fast position that makes an adverse ruling a certainty.") (internal quotation marks and citation omitted).

In this case, Parent made no showing that irreparable harm was likely to result from Student's inability to immediately enroll in the magnet school. Neither does the exception for futility apply here, since the Board had the power to alter or clarify its interpretation of the relevant statutes or to change its school attendance policy. Nor does a single Board articula-

tion of its policy warrant a finding that the Board had taken a hard and fast position that made an adverse ruling a certainty.

Further, waiving the requirement that Parent exhaust her administrative remedies in no way promotes judicial economy in this case, since the only resulting omission is of administrative, not judicial, process. I would also not rely on the notion that an unspecified "important public interest" is at stake in order to waive the exhaustion of administrative remedies requirement. The only case relied on by the majority for this proposition did not involve a question of exhaustion of administrative remedies. *See Curtis v. State,* 345 S.C. 557, 568, 549 S.E.2d 591, 596 (2001). Moreover, even assuming this rationale is an appropriate basis for excusing failure to exhaust administrative remedies, it must be used with great judicial restraint and only where a question "of imperative and manifest urgency" truly exists, since any case, construed at the most useful level of generality, could be found to embrace an important public interest.[12] The opportunity for nonresident students *to displace resident students* in county magnet schools contrary to local school board policy can hardly be said to present a question of imperative and manifest urgency. The majority trivializes the doctrine by applying it to these facts.

## II.   S.C.Code § 59–63–30

On the merits, I agree with the majority that S.C.Code Ann. § 59–63–30 (2004) entitles a nonresident child to attend the schools within a public school district by acquiring property with a tax-assessed value of at least $300 in the district. However, I disagree with the majority that the General Assembly intended anything more than this. The General Assembly clearly contemplated the question of how students would be assigned within a district, and it explicitly conferred full discretionary authority to decide such matters on the board. S.C.Code Ann. § 59–19–90 (2004) provides, in relevant part:

The board of trustees shall also:

---

**12.**  *Curtis* dealt with an unconstitutional presumption of criminal intent in a statute creating a felony offense. *Curtis* at 570, 549 S.E.2d at 597–98.

. . .

(9) *Transfer and assign pupils.* Transfer any pupil from one school to another so as to promote the best interests of education, and *determine the school within its district in which any pupil shall enroll* [.]

(Emphasis added.) Thus, under § 59–19–90(9), the board of trustees has authority to determine which school in its district any student will attend.

Section 59–63–30 does no more than establish means by which a child is entitled to attend public school in a particular school district; nothing in its language implies a legislative intent to override the plain language of § 59–19–90. Thus, we must recognize the validity of both. *See Stewart v. Charleston County School Dist.,* 386 S.C. 373, 379, 688 S.E.2d 579, 582 (Ct.App.2009) ("Statutes dealing with the same subject matter are to be construed together, if possible, to produce a harmonious result.") (citation omitted). Although the majority attempts to reconcile the conflict it creates by distinguishing between a student's enrolling and the Board's assigning, the plain language of § 59–19–90(9) confers authority on the Board to "determine the school within its district in which any pupil *shall enroll* " (emphasis added).

As for magnet schools and their admission policies, the General Assembly could not have intended to create an equal treatment mandate for them when it enacted § 59–63–30 in 1962, as magnet schools did not then exist. Section 59–63–30, read together with § 59–19–90(9), requires nothing more or different than that the board admit a qualifying nonresident student to a school of the board's choice within the district based upon policies that promote the best interests of education. This Court has historically deferred to local government control of the operation of public schools. *See Bd. of Trustees of School Dist. of Fairfield County v. State,* 395 S.C. 276, 290, 718 S.E.2d 210, 217 (2011); *United States v. Charleston County School Dist.,* 960 F.2d 1227, 1233 (4th Cir.1992). We should continue that deference and not read into the statute a restriction on the board's discretion to assign students to particular schools within the district.

The majority simply assumes that if the Board employs a merit-based selection process for admitting students to

AMHS, it cannot ignore that process in a particular case. While this proposition is appealing, the majority cites no legal authority for it, just as it cites no authority for the proposition that the Board may not distinguish among students who became eligible to attend district schools by different means. *Stewart* has no application to this case, as it found a constituent district board exceeded its statutory authority when it attempted to dictate the attendance criteria for a county-wide magnet school located within its subdistrict in defiance of the county-wide school district board. *See Stewart v. Charleston County School District,* 386 S.C. 373, 688 S.E.2d 579 (Ct.App. 2009).

Thus, I respectfully dissent.

Justice BEATTY, dissenting.

Respectfully, I dissent as I disagree with the majority's limitation of the statutory authority of the board of trustees. Although I agree with the majority's interpretation that a student may become eligible under section 59–63–30 to enroll in a particular school district via the purchase of property, I believe the board of trustees still retains its authority under section 59–19–90 to set attendance criteria for particular schools and to determine which school in its district a student may attend. Thus, for reasons that will be more fully explained, I would reverse the order of the circuit court.

## I.

As the majority concludes, section 59–63–30 entitles a child to attend the public schools of any school district if the child satisfies: (1) one of the three criteria outlined in subsections (a) through (c); and (2) both subsections (d) and (e). In essence, it provides an alternative for a child to attend school in a particular school district without being a resident of that school district.

This, however, does not end the analysis as the question becomes whether a board of trustees is authorized under section 59–19–90 to determine attendance criteria for a particular school and to which particular school in its district a student will attend. I believe the Legislature placed these ultimate decisions within the purview of the board of trustees'

authority, which is defined in section 59–19–90. Section 59–19–90 provides in relevant part:

The board of trustees shall also:

. . . .

(9) Transfer and assign pupils. Transfer any pupil from one school to another so as to promote the best interests of education, and *determine the school within its district in which any pupil shall enroll.*

(10) Prescribe conditions and charges for attendance. Be empowered *to prescribe conditions* and a schedule of charges based on cost per pupil as last determined, for attendance in public schools of the school district for

. . . .

(d) all other children specially situated and not meeting the eligibility requirements of § 59–63–30, but who shall have petitioned the trustees in writing seeking permission to attend the public schools of the school district.

S.C.Code Ann. § 59–19–90(9), (10)(d) (2004) (emphasis added).

Based on the plain language of the above-referenced subsections, it is clear the Legislature explicitly conferred full discretionary authority on a board of trustees to set attendance criteria for particular schools and to determine which school in its district a student may attend. *Cf. Stewart v. Charleston County Sch. Dist.*, 386 S.C. 373, 688 S.E.2d 579 (Ct.App.2009) (concluding CCSD had ultimate authority to set attendance guidelines for magnet school).

Although the majority rejects this interpretation, I discern nothing in section 59–63–30 that reflects a legislative intent to supersede the plain language of section 59–19–90. Thus, even though a student may become eligible under section 59–63–30 to enroll in a particular school district, the board of trustees still retains its authority under section 59–19–90 to set attendance criteria for particular schools and to determine which school in its district a student may attend.

Applying the foregoing to the facts of the instant case, I would find that once Student purchased real property with a tax-assessed value of $300 or greater in the CCSD, she

became eligible to attend the public schools within the Charleston County attendance zone, which includes the AMHS. However, pursuant to section 59–19–90, the Board was authorized to assign Student to any appropriate school whether it was the AMHS or some other grade-appropriate school within the district.

## II.

In a related argument, Parent contends the CCSD's policy of excluding nonresident children from its magnet schools violates the Equal Protection Clause of the South Carolina Constitution. Parent claims the policy "classifies school children as two groups, nonresident and resident, and takes away a nonresident child's entitlement to attend a magnet school while leaving a resident child's entitlement to attend a magnet school intact." Parent avers that this policy violates a nonresident child's right to equal protection as the CCSD cannot show "how excluding nonresident children from its magnet schools bears a reasonable relationship to the legislative purpose sought to be achieved by 59–63–30 and 59–19–90(10)."

The Equal Protection Clauses of our federal and state constitutions declare that no person shall be denied the equal protection of the laws. U.S. Const. amend. XIV, § 1; S.C. Const. art. I, § 3. Equal protection "requires that all persons be treated alike under like circumstances and conditions, both in privileges conferred and liabilities imposed." *GTE Sprint Commc'ns Corp. v. Pub. Serv. Comm'n of South Carolina,* 288 S.C. 174, 181, 341 S.E.2d 126, 129 (1986) (quoting *Marley v. Kirby,* 271 S.C. 122, 123–24, 245 S.E.2d 604, 605 (1978)). "Courts generally analyze equal protection challenges under one of three standards: (1) rational basis; (2) intermediate scrutiny; or, (3) strict scrutiny." *Denene, Inc. v. City of Charleston,* 359 S.C. 85, 91, 596 S.E.2d 917, 920 (2004). "If the classification does not implicate a suspect class or abridge a fundamental right, the rational basis test is used." *Id.* "Under the rational basis test, the requirements of equal protection are satisfied when: (1) the classification bears a reasonable relation to the legislative purpose sought to be

affected; (2) the members of the class are treated alike under similar circumstances and conditions; and, (3) the classification rests on some reasonable basis." *Id.*

Because the classification at issue does not implicate a suspect class or abridge a fundamental right, the analysis of this issue is governed by the rational basis test. Applying this test, I believe the CCSD's Board of Trustees legitimately imposed a residency requirement in order to effectuate the legislative purpose to reserve attendance at the AMHS, a specialized school with limited capacity for enrollment, for only bona fide residents of the CCSD. Thus, I would hold the Board's JFAB policy for the AMHS does not violate the Equal Protection Clause.

Furthermore, I note that appellate courts have consistently rejected Parent's claim and have held that the imposition of a residency requirement withstands scrutiny under the rational basis test. *See Martinez v. Bynum*, 461 U.S. 321, 328, 103 S.Ct. 1838, 75 L.Ed.2d 879 (1983) ("A bona fide residence requirement, appropriately defined and uniformly applied, furthers the substantial state interest in assuring that services provided for its residents are enjoyed only by residents. Such a requirement with respect to attendance in public free schools does not violate the Equal Protection Clause of the Fourteenth Amendment."); *see also* 78A C.J.S. *Schools and School Districts* § 989 (2011) ("Statutes establishing bona fide residency requirements, appropriately defined and uniformly applied, with respect to attendance at free public schools are constitutional.").

### III.

Finally, the Board contends the circuit court erred in lifting the automatic stay of its order as it authorized Student to attend the AMHS during the pendency of this appeal. I decline to address this issue as the Court of Appeals denied the Board's request at the onset of this appeal. Moreover, based on my decision to reverse the order of the circuit court, I would find the Board is authorized to determine whether Student may continue her enrollment at the AMHS.

## IV.

In conclusion, I believe that any other construction of the statutory provisions involved in this appeal would be contrary to the legislative intent. Moreover, to adhere to the circuit court's reasoning would effectuate chaos in our state school systems as it would entitle all nonresident children to be eligible to attend magnet schools which, in turn, may displace equally-qualified resident children.[13]

This Court has historically deferred to a local government's control over the operation of public schools.[14] I would continue that deference and decline to restrict the Board's statutorily-granted authority to establish admission criteria for particular schools and to determine which particular school a student will attend. Accordingly, I would reverse the order of the circuit court granting declaratory judgment in favor of Parent. *See Garris v. Governing Bd. of South Carolina Reinsurance Facility*, 319 S.C. 388, 390, 461 S.E.2d 819, 820–21 (1995) ("The decision to grant a declaratory judgment is a matter which rests in the sound discretion of the trial court and will not be disturbed absent a clear showing of abuse.").

---

**13.** In an affidavit, the principal of the AMHS stated the school has "a wait-list of 80 students for the ninth grade, and if a student who is not an actual resident of Charleston County were to enroll in AMHS, he or she would displace another student who would be in fact a resident of Charleston County."

**14.** *See United States v. Charleston County Sch. Dist.*, 960 F.2d 1227, 1233 (4th Cir.1992) ("No single tradition in public education is more deeply rooted than local control over the operation of schools; local autonomy has long been thought essential both to the maintenance of community concern and support for public schools and to [the] quality of the educational process." (quoting *Milliken v. Bradley*, 418 U.S. 717, 741–42, 94 S.Ct. 3112, 41 L.Ed.2d 1069 (1974))).