742 S.E.2d 371

**TOURISM EXPENDITURE REVIEW COMMITTEE, Appellant,**

**v.**

**CITY OF MYRTLE BEACH, Respondent.**

Appellate Case No. 2011–200407.

No. 27249.

Supreme Court of South Carolina.

Heard Jan. 8, 2013.

Decided May 8, 2013.

John M.S. Hoefer and Chad N. Johnston, both of Willough-by & Hoefer, PA, of Columbia, for Appellant.

Michael W. Battle, of Battle & Vaught, PA, of Conway, for Respondent.

Justice KITTREDGE.

In this declaratory judgment action, the Tourism Expenditure Review Committee appeals the circuit court's declaration of the meaning of section 6–4–10 of the South Carolina Code. We vacate the circuit court's order for lack of subject matter jurisdiction and dismiss this appeal.

## I.

This case involves the South Carolina Accommodations Tax Act (Act), which sets forth the administration of the state sales tax of seven percent imposed on all sleeping accommodations provided to overnight guests. S.C.Code Ann. § 12–36–920(A) (Supp.2012). That seven percent tax is composed of several components, including a two percent "local accommodations tax" (A–Tax), which is remitted to the counties and municipalities where it was collected.[1] S.C.Code Ann. § 12–36–2630(3). Counties and municipalities receiving A–Tax revenues must expend those funds in accordance with the statutory provisions governing the allocation of A–Tax revenues (the Act).

---

1. The other components are as follows: four percent is credited to the state public school building fund and the remaining one percent is credited to the South Carolina Education Improvement Act of 1984 Fund. S.C.Code Ann. § 59–21–1010(A) & (B) (2004).

*See* S.C.Code Ann. § 6–4–5 to –35 (Supp.2012) (providing procedure for expending A–Tax funds).

For purposes of disposing of this case, we need only examine briefly section 6–4–10(4), which provides for the expenditure of A–Tax funds generally referred to as "65% Funds." These funds are allocated for "tourism-related expenditures." S.C.Code Ann. § 6–4–10(4)(a) and (b). It is statutory provisions relating to these 65% Funds that are the subject of this appeal.

The Act defines tourism-related expenditures to include:

The criminal justice system, law enforcement, fire protection, solid waste collection, and health facilities when required to serve tourists and tourist facilities. This is based on the estimated percentage of costs directly attributed to tourists.

S.C.Code Ann. § 6–4–10(4)(b)(4).

Subsection (4)(b) further explicitly provides that municipalities with "a high concentration of tourism activity" may use the 65% Funds "to provide additional county and municipal services, including, but not limited to, law enforcement, traffic control, public facilities. . . ." However, subsection (4)(b) also provides:

The funds must not be used as an additional source of revenue to provide services *normally provided* by the county or municipality but to promote tourism and enlarge its economic benefits through advertising, promotion, and providing those facilities and services which enhance the ability of the county or municipality to attract and provide for tourists.

S.C.Code Ann. § 6–4–10(4)(b) (emphasis added). The Act makes clear that "[i]n the expenditure of these [65%] funds, counties and municipalities are required to promote tourism. . . ." S.C.Code Ann. § 6–4–10(4)(d).

The legislature specifically provided for a local advisory committee and, more importantly for purposes of this appeal, a statewide oversight body—the Tourism Expenditure Review Committee (TERC)—to ensure counties and municipalities comply with the basic requirements set forth in the Act. S.C.Code Ann. § 6–4–35. Counties and municipalities are

required to submit annual reports, which TERC reviews to determine if the expenditures comply with the Act. S.C.Code Ann. §§ 6–4–25(D); –35(B)(1)(a). In its annual report, the county or municipality must submit a "list of how funds from the accommodations tax are spent" and "must include funds received and dispersed [sic] during the previous fiscal year." S.C.Code Ann. § 6–4–25(D)(3).

The legislature granted TERC the authority to challenge a local government's expenditure of 65% Funds. TERC must notify the county or municipality, which may provide "further supporting information" regarding its expenditure for TERC to consider in its compliance determination. S.C.Code Ann. § 6–4–35(B)(1)(a). Significantly, for TERC to pursue a challenge, the Act further provides:

> If [TERC] finds an expenditure to be in noncompliance, it *shall* certify the noncompliance to the State Treasurer, who shall withhold the amount of the expenditure found in noncompliance from subsequent distributions in accommodations tax revenue otherwise due the municipality or county. An appeal from an action of [TERC] under this subitem lies with the Administrative Law Judge Division.

S.C.Code Ann. § 6–4–35(B)(1) (emphasis added).

## II.

Over the years, the City of Myrtle Beach and TERC have occasionally disputed the meaning of various provisions of section 6–4–10(4)(b). However, no particular expenditure or allocation is at issue here, nor are any A–Tax revenues being held by the State Treasurer in connection with this appeal. While TERC has indicated that it may certify as noncompliant the City's expenditures of 65% Funds, it has not done so here. To resolve this difference of opinion, the City first filed an action in the Administrative Law Court, which granted TERC's motion to dismiss the matter for lack of jurisdiction. TERC then filed the current action in circuit court as a declaratory judgment action seeking to have section 6–4–10(4) construed. The City did not challenge the jurisdiction of the circuit court. The circuit court adopted the City's view of section 6–4–10(4), from which TERC has appealed. We dismiss the appeal.

## III.

Although neither party has raised the question, we first consider whether this Court has subject matter jurisdiction over this case. Even where the parties do not raise such a challenge, the issue of subject matter jurisdiction is properly raised for the first time on appeal by the appellate court "since the parties cannot by consent or agreement confer jurisdiction on the court to render a declaratory judgment in the absence of an actual justiciable controversy." *Power v. McNair,* 255 S.C. 150, 153, 177 S.E.2d 551, 552 (1970).

To fall within the intended purpose and scope of the Declaratory Judgments Act,[2] the parties must seek adjudication of a justiciable controversy. *Sunset Cay, LLC v. City of Folly Beach,* 357 S.C. 414, 423, 593 S.E.2d 462, 466 (2004) ("Despite the [Declaratory Judgments] Act's broad language, it has its limits."); *see also Power,* 255 S.C. at 154–55, 177 S.E.2d at 553 (noting that where adjudication of a question "would settle no legal rights of the parties," it would be "only advisory and, therefore, beyond the intended purpose and scope of a declaratory judgment"). " 'Questions of statutory interpretation, by themselves, do not rise to the level of actual controversy.' " *Entergy Nuclear Generation Co. v. Dep't of Envtl. Prot.,* 459 Mass. 319, 944 N.E.2d 1027, 1034 (2011) (quoting *Woods Hole, Martha's Vineyard & Nantucket S.S. Auth. v. Martha's Vineyard Comm'n,* 380 Mass. 785, 405 N.E.2d 961, 966 (1980)).

"The Uniform Declaratory Judgment[s] Act is not an independent grant of jurisdiction." *Brown v. Oregon State Bar,* 293 Or. 446, 648 P.2d 1289, 1292 (1982). Further, it is fundamental that the Declaratory Judgments Act does not eliminate the case-or-controversy requirement. *See Power,* 255 S.C. at 153–54, 177 S.E.2d at 552 (" 'The existence of an actual controversy is essential to jurisdiction to render a declaratory judgment.' " (quoting *S.C. Elec. & Gas Co. v. S.C. Pub. Serv. Auth.,* 215 S.C. 193, 215, 54 S.E.2d 777, 787 (1949))); *City of Columbia v. Sanders,* 231 S.C. 61, 68, 97 S.E.2d 210, 213 ("The Uniform Declaratory Judgment[s] Act ... 'does not require the Court to give a purely advisory

---

2. S.C.Code Ann. §§ 15–52–10 to –140 (Supp.2012).

opinion which the parties might, so to speak, put on ice to be used if and when the occasion might arise,' or 'license litigants to fish in judicial ponds for legal advice.' " (citations omitted)).

Here, the legislature has provided an exclusive statutory procedure for challenging the expenditure of A–Tax funds. Under section 6–4–35(B), TERC is authorized to "certify noncompliance to the State Treasurer." Once that process is initiated, the State Treasurer "shall withhold the amount of the expenditure...." S.C.Code Ann. § 6–4–35(B). An appeal from TERC's noncompliance certification "lies with the Administrative Law Judge Division." *Id.* Section 6–4–35(B) provides the exclusive process and means to challenge an expenditure of A–Tax funds. No case or controversy exists outside this statutory process. The Declaratory Judgments Act may not be invoked to avoid or circumvent the legislature's exclusive method for challenging A–Tax funds expenditures. *See also Dep't of Cmty. Affairs v. Mass. State Coll. Bldg. Auth.,* 378 Mass. 418, 392 N.E.2d 1006, 1009 (1979) ("A mere difference of opinion or uncertainty over the meaning to be ascribed a statute does not, without more, rise to the level of a justiciable controversy."); *Harrington v. State Office of Court Admin.,* 114 Misc.2d 351, 451 N.Y.S.2d 595, 596–97 (1982) (finding the court was without power to grant declaratory relief on the grounds that any declaration would be "merely an advisory opinion evaluating the accuracy of the statutory interpretation and would not determine any justiciable controversy between the parties" where there existed no genuine controversy, but rather the parties sought only an abstract resolution of their different interpretations of a law).

## IV.

We vacate the circuit court's order for lack of subject matter jurisdiction and dismiss this appeal.

VACATED AND DISMISSED.

Acting Justice JAMES E. MOORE, concurs.

BEATTY, J., concurs in result only.

PLEICONES, Acting Chief Justice, dissenting in separate opinion in which HEARN, J., concurs.

Acting Chief Justice PLEICONES.

I respectfully dissent as I find the circuit court has subject matter jurisdiction over this declaratory judgment action. Moreover, I would reach the merits and affirm.

In South Carolina, "subject matter jurisdiction is the power to hear and determine cases of the general class to which the proceedings in question belong." *Storm M.H. ex rel. McSwain v. Charleston Cty. Bd. of Trustees*, 400 S.C. 478, 735 S.E.2d 492 (2012) citing *Ward v. State*, 343 S.C. 14, 538 S.E.2d 245 (2000). As set forth below, I find the circuit court has subject matter jurisdiction over this declaratory judgment suit.

Under South Carolina's declaratory judgment act:

Any person interested under a deed, will, written contract or other writings constituting a contract or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder.

S.C.Code Ann. § 15–53–30 (2005).

Further, § 15–53–20 (2005) of the act provides:

Courts of record within their respective jurisdictions shall have power to declare rights, status and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect. Such declarations shall have the force and effect of a final judgment or decree.

The circuit court has subject matter jurisdiction to hear this declaratory judgment action and to construe the statute. While it is true that the enforcement mechanism is in the Administrative Law Judge Division and therefore the circuit could have exercised its discretion and declined to hear this matter,[3] the existence of this remedy does not deprive the

---

3. *See e.g. Bank of Augusta v. Satcher Motor Co.,* 249 S.C. 53, 152 S.E.2d 676 (1967).

circuit court of jurisdiction nor does it negate the existence of a justiciable controversy. I therefore dissent from the majority's *sua sponte* conclusion that the circuit court lacked subject matter jurisdiction over this declaratory judgment action. Further, I would affirm the circuit court's construction of S.C.Code Ann. § 6–4–10(4) (2004).

HEARN, J., concurs.