743 S.E.2d 117

Brian **PULLIAM**, Deborah C. Pulliam, Monica Bradshaw, Helen K. Cook, Kala Craig, Victor E. Dirienzo, Cynthia Diturski, J. Scott Drexel, Kathleen Kramer, Robert Loebe, Melanie McDaniel, David Osborne, Celeste Arrowwood, Vincent Dionna, Mikel Marcuse, James P. Wheaton, Jr., Joseph Manfredini, Elena Manfredini, David Cox, Jonathan B. Dillard, Eric Wilson, Don and Debbie Neff, and Marianna Junda, Respondents.

v.

TRAVELERS INDEMNITY COMPANY, M.U.I. Carolina Corporation, Kensington Place Owners Association, Inc., Regent Carolina Corporation, and Regent Corporation,

Of whom Travelers Indemnity Company is the Appellant.

Appellate Case No.2012–211939.

No. 5130.

Court of Appeals of South Carolina.

Heard April 3, 2013.

Decided May 8, 2013.

Rehearing Denied June 20, 2013.

334

William Pearce Davis and Susan Drake DuBose, both of Baker Ravenel & Bender, LLP, of Columbia, for Appellant.

W. Jefferson Leath, Jr. and Michael S. Seekings, both of Leath Bouch & Seekings, LLP, of Charleston, for Respondents.

KONDUROS, J.

Travelers Indemnity Company (Travelers) appeals the circuit court's grant of summary judgment in favor of Respondents in this declaratory judgment action. The circuit court determined the Directors and Officers Endorsement (D & O Endorsement) issued by Travelers covered certain allegations against Kensington Place Property Owners Association (KPOA). We affirm in part and reverse in part.

**FACTS/PROCEDURAL HISTORY**

M.U.I. Carolina Corporation, Regent Carolina Corporation, and Regent Corporation (collectively Developers) purchased property from the PTL [1] bankruptcy estate in 1990. Developers completed construction and made repairs to the property in 1994 and 1995 and then began marketing condominium units as the Kensington Place Horizontal Property Regime (Kensington Place). Developers created KPOA to manage Kensington Place. From its inception in 1996 until April 2007, a three-member board comprised of Developers' employees or designates operated KPOA. The common elements of Kensington Place were transferred to the unit owners in April 2007, and individual unit owners became a part of KPOA's board.

In 2008, Respondents, individual unit owners in Kensington Place, filed an underlying lawsuit alleging breaches of fiduciary duty, negligence, and breach of the warranty of habitability against M.U.I. and Regent as developers of Kensington Developers. Respondents also sued KPOA for breaches of fiduciary duty and negligence in failing to (1) adequately inspect, repair, and maintain the common elements, (2) inform unit owners of

---

1. PTL was an evangelistic ministry which began as a television program and eventually grew to include a theme park in Fort Mill, South Carolina. Charles H. Lippy, *PTL Club* (May 1, 2013), http://www.scencyclopedia.org/ptlclub.htm.

the conflict of interest in a developer-controlled POA, and (3) establish a reserve fund to pay for repairs.

Respondents then filed this declaratory judgment action seeking a determination of whether the policy issued to KPOA by Travelers covered the claims alleged against KPOA in the underlying lawsuit. The parties agreed the allegations were based on "wrongful acts" as contemplated by the D & O Endorsement. However, Travelers filed a motion for summary judgment arguing, inter alia, Respondents' claims are for "property damage" and punitive damages, both of which are excluded under the D & O Endorsement. The Respondents filed a summary judgment motion arguing the only interpretation of the policy is that their claims were not excluded because they claimed economic loss based on breaches of duty and negligence, not "property damage."

As to KPOA, Respondents specifically alleged in the underlying complaint [2]:

19. The Defendant POA had the legal duty, as a fiduciary from 1996 until April 24, 2007, to insure that the Common Elements were properly inspected, repaired, and maintained, yet the POA, Inc., being controlled by the developer, failed in these duties, placed the interest of the developer ahead of the owners, including these Plaintiffs, and therefore breached its fiduciary duties. Additionally, the Defendant POA had the duty to create and fund an adequate fund of reserves for the normal replacement of the components of the Common Elements, yet, in placing the interest of the defendant Developers ahead of the owners, the POA failed to develop and fund and adequate reserve fund.

20. As a result of the aforementioned breaches of fiduciary duty, the Defendants are liable to the homeowners for all damages proximately flowing from the breach, including damages for the continued deterioration of the common elements.

. . . .

2. In determining whether Respondents' claims were covered, the circuit court reviewed the Fifth Amended Complaint. For the sake of brevity, we refer to this simply as the complaint.

338

26. That the actions of the POA were negligent, reckless, willful, and wanton, in one or more of the following of the following particulars, to wit:

a. In failing to perform adequate inspections of the Common Elements from 1996–2007;

b. In failing to retain experts to assess the conditions of the building from 1996–2007;

c. In failing to maintain the Common Elements to an adequate state of repair from 1996–2007;

d. In failing to repair the Common Elements of the building from 1996–2007;

e. In negligently placing the Developers' interests ahead of those of the individual property owners, so as to place the entire financial burden of deferred maintenance upon the property owners, including these Plaintiffs, while acting in the capacity of a fiduciary;

f. In failing to establish and fund adequate reserve funds;

g. In failing to establish an adequate depreciation schedule and adequately fund known building component repair and replacement; and

h. In failing to advise the homeowners of the various conflicts of interest inherent in a developer-controlled POA, and in failing to provide for independent representation of non-developer homeowners both with respect to POA actions, and also regarding property management and maintenance.

27. As a direct and proximate result of the negligence, recklessness, willfulness and wantonness of the Defendants as set out above, the Plaintiffs Homeowners will be required to expend considerable sums for the repair and refit of this property, all to their damage.

WHEREFORE, the Plaintiffs pray that they have judgment against the Defendants as follows:

1. Actual damages.

2. Actual and punitive damages on their cause of action for negligence and breach of fiduciary duty.

3. Such other and further relief as this Court deems just and proper.

The circuit court granted Respondents' motion and denied Travelers' motion. It found the complaint alleged KPOA had breached certain fiduciary duties that related to the initial design and construction defects. The circuit court reasoned allegations relating to the initial defective design or construction would not be considered "property damage" under *Crossmann Communities of North Carolina, Inc. v. Harleysville Mutual Insurance Co.*, 395 S.C. 40, 717 S.E.2d 589 (2011), and would not be excluded from coverage under the policy. The circuit court further reasoned "property damage" did include damages to other property flowing from the defective design or construction and such allegations would be excepted from coverage under the "property damage" exclusion in section (I)(D)(1) of the D & O Endorsement. The order concluded "damages for correction of initial defective construction are covered. Other property damage caused by such defective construction is not." This appeal followed.

## STANDARD OF REVIEW

 "A declaratory judgment action is neither legal nor equitable, and therefore, the standard of review is determined by the nature of the underlying issue." *Auto Owners Ins. Co. v. Newman*, 385 S.C. 187, 191, 684 S.E.2d 541, 543 (2009). "When the purpose of the underlying dispute is to determine whether coverage exists under an insurance policy, the action is one at law." *Id.* "Where the action presents a question of law ... this Court's review is plenary and without deference to the trial court." *Crossmann Cmtys. of N.C., Inc. v. Harleysville Mut. Ins. Co.*, 395 S.C. 40, 47, 717 S.E.2d 589, 592 (2011).

## LAW/ANALYSIS

### I. Property Damage Exclusion in D & O Endorsement[3]

 Travelers asserts the circuit court erred in relying on *Crossmann Communities of North Carolina, Inc. v. Harleysville Mutual Insurance Co.*, 395 S.C. 40, 717 S.E.2d 589 (2011) to determine what constituted "property damage" within the D & O Endorsement exclusion. We agree in part and disagree in part.

---

3. Because this issue is a threshold question, we will address it first.

The D & O Endorsement, which covers "wrongful acts"[4] states the following:

(I.)(D.) The insurance provided by this endorsement does not apply to:

(1) "Bodily injury," "property damage," "personal injury," or "advertising injury."

(2) Punitive or exemplary damages.

(V.)(F.) "Property Damage" means:

Physical injury to tangible property, including all resulting use of that property;

Loss of use of tangible property that is not physically injured; or

Diminution of property value.

In *Crossmann*, the Supreme Court of South Carolina addressed allegations of initial construction defects and whether they were covered "property damage" within the context of a commercial general liability (CGL) policy. As in this case, the policy in *Crossmann* defined "property damage" as "physical injury to tangible property." *Id.* at 48, 717 S.E.2d at 593. The court stated:

With respect to the first quoted definition of "property damage," the critical phrase is "physical injury," which suggests the property was not defective at the outset, but rather was initially proper and injured thereafter. We emphasize the difference between a claim for the costs of repairing or removing defective work, which is not a claim for "property damage," and a claim for the costs of repairing damage caused by the defective work, which is a claim for "property damage."

*Id.* at 49, 717 S.E.2d at 593 (citations and quotation marks omitted).

The case *sub judice* required the circuit court to consider allegations relating to initial defects and further resulting damage, although under a different type of policy. In addressing those issues, it was not improper for the circuit court to look to *Crossmann* for guidance.[5] Nevertheless, we con-

---

4. "'Wrongful act' means any actual or alleged error, mistake, omission or neglect or breach of duty by any insured."

5. Travelers relies in part on *Eastpointe Condominium I Ass'n v. Travelers Casualty & Surety Co. of America*, 379 Fed.Appx. 906 (11th Cir.2010)

clude the application of the principles set forth in *Crossmann* do not correlate adequately to the facts and the policy in this case to support the circuit court's conclusion in its entirety.

In *Crossmann*, the Court concluded the cost to repair or replace initial design or construction defects was not covered under the CGL policy as "property damage." The circuit court here also concluded the cost to repair and replace construction defects did not constitute "physical injury to tangible property," thus leading to the contrary result that coverage was *not* excluded. However, reviewing the allegations of the complaint and the D & O Endorsement, we arrive at two ineluctable conclusions. First, Respondents do not contend KPOA completed construction or made repairs to Kensington Place in 1994 and 1995 as KPOA did not exist at that time. Consequently, no reasonable interpretation of the allegations in the complaint can support a finding that KPOA was being sued for initial construction or repair defects. Second, any further deterioration of the faulty construction or repairs from 1997 to 2006 that could arguably be attributed to KPOA's inaction would at most constitute diminution in the value of Respondents' property—a harm specifically included in the definition of "property damage." Therefore, we conclude the circuit court erred in determining damages for correction of defective construction are covered under the D & O Endorsement.[6]

---

(applying Florida law) to support its position. In *Eastpointe*, the court was considering a declaratory judgment action regarding defense of claims alleged against the condominium association. *Id.* at 906. A unit owner claimed the association failed to adequately maintain and repair the roof and air conditioning system of the condominium building before, between, and after two hurricanes, resulting in water intrusion, mold, and other damages. *Id.* at 906–07. The plaintiff's claims were for negligence, breach of fiduciary duty, and breach of contract. *Id.* The court determined an exclusion for claims "arising out of property damage" prevented coverage for the claims even though the claims were grounded in the association's breach of its fiduciary duty. *Id.* at 907–08. The circuit court's analysis in this case is not inconsistent with *Eastpointe*. Assuming the unit in *Eastpointe* was not defective prior to the water intrusion, the plaintiff's claim was to repair a physical injury to her tangible property—an injury that would also be considered "property damage" under *Crossmann*.

6. Because this analysis disposes of the question of coverage for construction defects, we decline to address Travelers's remaining arguments relating to that issue.

■ However, our analysis cannot end there. Respondents assert two more allegations not addressed by *Crossmann* or *Eastpointe*. They allege KPOA failed to establish a reserve fund and breached a fiduciary duty to warn of the inherent conflict in developer-controlled associations. The duty to establish a reserve fund, while related to the property damage, did not result in physical damage to tangible property as required by the policy. The failure to establish a reserve fund resulted in Respondents having to expend more from their own pockets to make the repairs than they might have otherwise had to expend—economic damage. *See Builders Mut. Ins. Co. v. Lacey Constr. Co.*, No. CIV.A. 3:11–cv–400–CMC, 2012 WL 1032539, at *9 (D.S.C. Mar. 27, 2012) ("To the extent damages sought in the [underlying action] are for inadequate reserves or failure to record a deed, they do not involve physical injury and, consequently, cannot satisfy the definition of property damage.").[7] Likewise, allegations that KPOA breached its fiduciary duty by failing to warn of conflicts of interest in a developer-controlled POA do not allege physical injury to tangible property constituting property damage. Of course, the burden to prove damages for the covered causes of action will be on Respondents at trial.

## II. Additional Policy Exclusions

■ Travelers argues several other D & O Endorsement exclusions prevent coverage for Respondents' claims. Because we have determined the allegations for failure to establish a reserve fund and warn of conflicts of interest are not excluded as "property damage," we will address each exclusion in turn as it relates to those claims.

First, we recognize the circuit court did not explicitly rule on these additional exclusionary provisions. However, these issues were raised in Travelers' Memo In Support of Summary Judgment and in its Motion to Alter or Amend the Judgment. Consequently, they are preserved for appellate review. *See Pye v. Estate of Fox*, 369 S.C. 555, 565–66, 633 S.E.2d 505, 510–11 (2006) (indicating once an issue has been

---

7. *Lacey* was considering "property damage" in a CGL policy in which the definition of "property damage" included physical damage to tangible property. *Id.* at *6.

raised to the trial court and is still not ruled upon after such a request in a Rule 59(e) motion, the issue is sufficiently preserved for appellate review).

Section I(D)(3)(b) of the D & O Endorsement excludes coverage for damages resulting from "[a]ny dishonest, fraudulent, criminal or malicious act, error or omission committed by or with the knowledge of any insured." In this case, Respondents allege KPOA "placed the interest of the developer ahead of the owners" when it failed to properly inspect or maintain the property or establish a reserve fund. While the act of placing the developer's interests before the owners may constitute a breach of fiduciary duty, it does not allege any dishonest, fraudulent, criminal, or malicious action. Therefore, this provision does not bar coverage for the remaining claims.

■ Section I(D)(3)(f) excludes coverage for damages resulting from "[t]he failure of any insured to enforce the rights of the Named Insured against the builder, sponsor or developer of the property designated in the Declaration." Again, this exclusion was brought to the circuit court's attention but was not specifically ruled upon. Travelers contends this exclusion applies because, in essence, Respondents' complaint alleges KPOA failed to enforce the owners' rights against the developers by putting the developers' interests ahead of the owners' interests. We disagree. The complaint does not allege KPOA failed to enforce any rights or compel the developer to perform a particular action. The complaint alleges a failure establish the reserve fund and to warn of conflicts of interest. Consequently, this argument is without merit.

■ Finally, section I(D)(3)(i) excludes coverage for damages resulting from "[a]ny claim or 'suit' made by any insured against another insured." Travelers argues seven of Respondents who have in the past served as boardmembers of KPOA, are insureds under the D & O Endorsement and cannot participate in the underlying lawsuit. The D & O Endorsement defines who is an insured.

WHO IS AN INSURED

B. Your directors, trustees or officers are also insureds, but only while acting within the scope of their duties for you. This includes:

1. Those who currently are directors, trustees or officers;

2. Those who were directors, trustees or officers when the "wrongful act" took place;

3. Those who become directors, trustees or officers after the effective date of the insurance, but only for subsequent "wrongful acts."

C. Your employees and members are insureds, but only while acting at your direction and within the scope of their duties for you.

The wrongful acts alleged against KPOA occurred from 1997–2006. According to the Record on Appeal, none of the members were on the board at the time the alleged wrongful acts took place.[8] Therefore, this argument is without merit.

### III. Punitive Damages

 Travelers argues the circuit court erred in failing to rule on the issue of coverage for punitive damages under the D & O Endorsement. We agree.

The policy clearly excludes punitive damages in Section I(D)(2). Because punitive damages have been pled, the issue will be a part of the underlying trial and should be addressed so as to avoid any potential conflict regarding coverage for such exemplary damages. *See Storm M.H. ex rel. McSwain v. Charleston Cnty. Bd. of Trustees*, 400 S.C. 478, 487, 735 S.E.2d 492, 497 (2012) (addressing an issue in the interest of judicial economy). We exercise our discretion to rule on this issue and conclude the D & O Endorsement does not cover punitive damages.

### CONCLUSION

Based on all of the foregoing, we conclude the D & O Endorsement provides coverage for Respondents' allegations against KPOA for breach of fiduciary duty in failing to establish a reserve fund and warn of the potential conflicts in a developer-controlled POA. We find the circuit court properly held claims alleging damage to other property as a result of

---

8. Deborah Pulliam–April 24, 2007–Feb.2008; Elena Manfredini—two months in 2008; Vincent Dionna–2007; Helen Cook–May 2007–Feb. 2008; Mikel Marcuse–July 2007–Feb.2008; Kathleen Kramer–Nov. 2007–Feb.2008, April 2008–present; David Osborne–Dec. 2007–April 2008.

defective design or construction were excluded as "property damage." We further conclude the circuit court erred in finding the D & O Endorsement provided coverage for correction of initial defective construction. Finally, we hold the D & O Endorsement does not cover claims for punitive damages. Therefore the ruling of the circuit court is

**AFFIRMED IN PART and REVERSED IN PART.**

HUFF and WILLIAMS, JJ., concur.