69 A.3d 1224

Linda MARTIN, et al.

v.

ALLEGANY COUNTY BOARD OF EDUCATION.

No. 1070, Sept. Term, 2012.

Court of Special Appeals of Maryland.

June 28, 2013.

598

Jasin C. Buckel (S. Ramani Pillai, Buckel, Levasseur & Pillai, LLC, on the brief), Cumberland, MD, for Appellant.

G. Gary Hanna, Cumberland, MD, for Appellee.

Panel: MEREDITH, GRAEFF, and HOTTEN, JJ.

HOTTEN, J.

Appellants, Linda Martin and other similarly situated parents, filed a petition for judicial review of the Maryland State Board of Education's ("State Education Board") determination, which affirmed the decision of appellee, the Allegany County Board of Education ("Allegany Education Board"). At issue was the termination of an agreement between the Allegany Education Board and the Washington County Board of Education ("Washington Education Board"), which provided approximately forty students, who resided in Allegany County, the opportunity to attend schools in Washington County. Appellants allege that the Allegany Education Board's decision violated the Md.Code (1978, 2008 Repl.Vol., 2012 Cum. Supp.), § 4–121 of the Education Article[1] [hereinafter "Edu-

---

1. Md.Code (1978, 2008 Repl.Vol.), § 4–121 of the Education Article provides in pertinent part:

 (a) *Definitions.*—(1) In this section the following words have the meanings indicated.

 * * *

 (3) "Receiving county" means a county that receives the children of an adjoining, sending county into its public schools.
 (4) "Sending county" means a county that sends children who reside within its borders to a public school in an adjoining, receiving county.
 (b) *School to be free.*—A school that is in one county and near the boundary of an adjoining county is free to the children of the adjoining county as provided in this section.
 (c) *Joint provision for school support and attendance policies; ...*—
 (1) The county boards of the two counties may:
 (i) Provide jointly for the maintenance and support of the jointly attended school in the receiving county; and
 (ii) Determine the geographical attendance areas and other attendance policies of the two counties for all jointly attended schools in the receiving county.

cation Article § 4–121"]. The Circuit Court for Allegany County affirmed the State Education Board's ruling. Appellants noted an appeal, and present two questions for our consideration:

> I. Was the decision of the Allegany County Board of Education in violation of § 4–121 of the Education Article, and thus properly subject to reversal by the State Board and/or the lower court?
>
> II. Was the decision of the Allegany County Board of Education arbitrary or capricious and violative of sound educational policy, thereby mandating reversal by the State Board and/or the lower court?

For the reasons that follow, we affirm the judgment of the circuit court.

## FACTUAL AND PROCEDURAL BACKGROUND

On August 1, 2000, the Allegany Education Board voted to close a school in the most eastern region of its county,[2] and to consolidate students from the closing facility to nearby institutions.[3] To address the parents' apprehension regarding the consolidation, the Allegany Education Board and the Washington Education Board entered into an agreement, which allowed students, who resided in Little Orleans, Allegany County, Maryland to attend secondary schools in either Cumberland, Maryland in Allegany County or Hancock, Maryland in Washington County. Many students opted to attend school in Allegany County, while others decided to attend the Washington County schools. "The students who

---

> (2) If the two county boards fail to agree on a geographical attendance area or attendance policy, the State Superintendent shall decide the matter.

**2.** The record does not indicate whether a public hearing was held regarding the closing of the school.

**3.** Md.Code (1978, 2008 Repl.Vol.), § 4–120(a) of the Education Article reads:
> (a) *Consolidation of schools.*—If a county board considers it practicable, it shall consolidate schools.

attended school in Washington County were counted as Washington County students for the purpose of calculating state aid to schools. The Allegany [Education Board] paid the transportation costs for all of said students."[4]

On February 28, 2011, the superintendent of Allegany County Public Schools, David Cox ("Mr.Cox"), drafted letters to the parents whose children opted to attend school in Washington County, stating (parenthesis omitted):

... For the 2011–2012 school year[,] Allegany County Public Schools face a reduction in state funding of over $6.5 million due to our declining enrollment and loss of state revenues. As a result, we must consider the termination of our contract with Washington County Public [S]chools to continue providing some $191,000 of Allegany County revenue for approximately 40 students to attend Washington County Public Schools. This arrangement also costs Allegany County Public Schools about $400,000 in lost state revenue. As you can see, this arrangement costs [Allegany County Public Schools] about $600,000 per year.

\* \* \*

We recognize the impact that this consideration would have on your child(ren) and on students who are in their secondary years of study, and do not take that lightly. We wish that this consideration were [sic] not necessary. The cuts in state funding will all be finally determined by the General Assembly, and the final impact and recommended arrangements will not be known until then.

Thereafter, the Allegany Education Board extensively debated the issue, and held a public hearing for parents, students, and the community to assert their viewpoints regarding the possible termination of the agreement, answer countless questions, and provide information to impacted families. On

---

4. Md.Code (1978, 2008 Repl.Vol.), § 4–120(b) of the Education Article provides:

 (b) *Transportation of pupils.*—Each county board shall arrange for the transportation of students to and from consolidated schools.

June 3, 2011, Mr. Cox again corresponded with the parents via letter, indicating:

At the June 1, 2011 meeting of the Allegany County Board of Education, the Board voted to phase out the tuition support program that currently supports residents in the Little Orleans community to attend middle and high school in Washington County. Allegany County residents who are students in the 10th—12th grades at Hancock High School in the 2011–2012 school year will receive tuition support. It is the intent of the Board to allow these students to complete their high school experience at Hancock High School over the next three years, contingent on available funding. Transportation will be provided to Hancock High School at least for one more year.

Students who are in grades Pre–K through 9th grade for the 2011–2012 school year who live in the Little Orleans community are districted to attend Flintstone Elementary, Washington Middle School, and Fort Hill High School, as some have chosen even while we have supported the Washington County choice. We welcome all the children of Little Orleans to Washington Middle and Fort Hill High School and will plan an orientation session for a better transition experience.... [5]

On June 29, 2011, appellants requested that the State Education Board review the Allegany Education Board's decision pursuant to the Code of Maryland Regulations ("COMAR") 13A.01.05.02.[6]

---

**5.** "For the 2011–2012 school year[,] there [were] 17 high school students attending school in Washington County [from Allegany County]. If the Board include[d] the middle school students, the number [would have] increase[d] to 37 students...."

**6.** COMAR 13A.01.05.02, Appeal Contents, provides:

　B. Deadlines
　　(1) Appeals.
　　(a) An appeal shall be taken within 30 calendar days of the decision of the local board or other individual or entity which issued the decision on appeal.

On July 27, 2011, the Allegany Education Board filed a motion for summary affirmance,[7] requesting that the State Education Board summarily affirm its decision pursuant to COMAR 13A.01.05.03D.[8] Thereafter, a "Save Orleans Students" group requested that the Circuit Court for Allegany County issue a temporary restraining order and an interlocutory injunction, which would permit Little Orleans residents to continue schooling in Washington County. The court ruled in favor of the Allegany Education Board, denying both the temporary restraining order, as well as the injunction on August 23, 2011. The group noted an appeal to our Court, but the action was dismissed.

On October 25, 2011, the State Education Board granted review and determined that (1) Education Article § 4–121

---

(b) The 30 days shall run from the later of the date of the order or the opinion reflecting the decision.

(2) The day of the decision of the local board may not be included in computing any period of time prescribed by these regulations.

(3) For appeals taken on or after April 1, 2011, an appeal shall be deemed to have been transmitted within the 30–day period of time permitted under § B(1) of this regulation if, before the expiration of the time, it has been:

(a) Delivered to the State Board; or

(b) Deposited in the United States mail, as registered or certified mail or Express Mail, or deposited with a delivery service. . . .

7. The motion for summary affirmance is dated July 27, 2010. However, the Allegany Education Board decided to terminate the agreement with Washington County Public Schools in June 2011. Hence, we perceive an error regarding the date.

8. COMAR 13A.01.05.03D reads:

D. Motion for Summary Affirmance.

(1) A motion for summary affirmance may be filed if there are no genuine issues of material fact and the respondent is entitled to affirmance as a matter of law.

(2) A memorandum in support of or in opposition to a motion for summary affirmance shall contain the following:

(a) A statement of the issues presented for review;

(b) A statement of the facts;

(c) An argument which includes reference to relevant legal principles and State Board decisions, if any;

(d) A short conclusion stating the relief sought;

(e) Any supporting documents, exhibits, and affidavits.

included the word "may," so there was no requirement of a cross-boundary school attendance and (2) "[i]t [was] incumbent on local boards when making decisions to consider the validity of all expenditures and to weigh and balance the needs of all students in th[o]se tough fiscal times."

On November 22, 2011, appellants filed a petition for judicial review. On November 29, 2011, the Allegany Education Board filed its response. On February 24, 2012, both parties filed a joint motion for extension of time to file their briefs, which was granted. On March 23, 2012, appellants filed an appeal in the Circuit Court for Allegany County pursuant to Md.Code (1984, 2009 Repl.Vol., 2012 Cum.Supp.), § 10–222(a) of the State Government Article, for judicial review of the State Education Board's decision.[9] On April 13, 2012, the Allegany Education Board filed its response.

Following a hearing on June 21, 2012, the trial court issued a memorandum and order on July 9, 2012, affirming the State Education Board, where it concluded that appellants did not support their assertion that Education Article § 4–121 was not discretionary, and that the State Education Board did not err in finding that the Allegany Education Board's decision was not arbitrary and capricious.

Appellant noted a timely appeal.

## STANDARD OF REVIEW

The doctrine that an individual has a Maryland constitutional right to judicial review regarding an administrative action is mostly predicated on Article 19 of the Maryland Declaration of

---

**9.** Md.Code (1984, 2009 Repl.Vol., 2012 Cum.Supp.), § 10–222(a) of the State Government Article provides:

(a) *Review of final decision.*—(1) Except as provided in subsection (b) of this section, a party who is aggrieved by the final decision in a contested case is entitled to judicial review of the decision as provided in this section.

(2) An agency, including an agency that has delegated a contested case to the Office, is entitled to judicial review of a decision as provided in this section if the agency was a party before the agency or the Office.

Rights.[10] *Jackson v. Dackman Co.*, 422 Md. 357, 378, 30 A.3d 854 (2011) (citing *State v. Bd. of Educ.*, 346 Md. 633, 647, 697 A.2d 1334 (1997)) (additional citation omitted). It provides:

> That every man, for any injury done to him [or her] in his [or her] person or property, ought to have remedy by the course of the Law of the [L]and, and ought to have justice and right, freely without sale, fully without any denial, and speedily without delay, according to the Law of the [L]and.

*Id.* at 376, 30 A.3d 854.

In examining the propriety of a trial court's consideration of a petition for judicial review, we analyze the agency's decision, not the trial court's ruling. *Venter v. Bd. of Educ.*, 185 Md.App. 648, 664, 972 A.2d 328 (2009) (quoting *Days Cove Reclamation Co. v. Queen Anne's County*, 146 Md.App. 469, 484, 807 A.2d 156 (2002)) (quoting *Gigeous v. E. Corr. Instit.*, 363 Md. 481, 495–96, 769 A.2d 912 (2001)). In this regard, we examine "the materials that were in the record before the agency at the time it made its final decision." *Bd. of Educ. of Talbot County v. Heister*, 392 Md. 140, 146, 896 A.2d 342 (2006) (citing *Chertkof v. Dep't of Nat. Res.*, 43 Md.App. 10, 17, 402 A.2d 1315 (1979)).

We review the agency's determination to consider whether such a ruling was " 'in accordance with the law or whether it [was] arbitrary, illegal, and capricious.' " *Venter*, 185 Md.App. at 664–65, 972 A.2d 328 (quoting *Maryland Dep't of the Env't v. Ives*, 136 Md.App. 581, 585, 766 A.2d 657 (2001)). Hence, our Court will affirm the agency's decision if it was predicated on substantial evidence from the record, and not erroneous as a matter of law. *Id.* at 665, 972 A.2d 328 (quoting *United Parcel Serv., Inc. v. People's Counsel*, 336 Md. 569, 577, 650 A.2d 226 (1994)).

---

**10.** The other constitutional sources for a court's power to review agency action are Article IV of the Maryland Constitution and Article 8 of the Declaration of Rights. *State v. Bd. of Educ.*, 346 Md. 633, 647, 697 A.2d 1334 (1997).

■ "The substantial evidence standard of review asks 'whether a reasoning mind reasonably could have reached the factual conclusion the agency reached,' " *Comptroller of the Treasury v. Clise Coal, Inc.,* 173 Md.App. 689, 697–98, 920 A.2d 561 (2007) (quoting *Fairchild Hiller Corp. v. Supervisor of Assessments of Washington County,* 267 Md. 519, 521–22, 298 A.2d 148 (1973)) (quoting *Ins., Comm'r v. Nat'l Bureau,* 248 Md. 292, 309–10, 236 A.2d 282 (1967)), and if not, we may "overrule [the] agency's factual finding [if] the finding is 'unsupported by competent, material, and substantial evidence in light of the entire record as submitted.' " *Id.* at 697, 920 A.2d 561 (citing Md.Code (1984, 2009 Repl.Vol., 2012 Cum. Supp.), § 10–222(h)(v) of the State Government Article).

■ " '[T]he paramount role of the State Board of Education in interpreting the public education law sets it apart from most administrative agencies.' " *Montgomery County Educ. Ass'n, Inc. v. Bd. of Education of Montgomery County,* 311 Md. 303, 309, 534 A.2d 980 (1987)[hereinafter *"Montgomery County Educ. Ass'n "*] (quoting *Bd. of Educ. for Dorchester County v. Hubbard,* 305 Md. 774, 791, 506 A.2d 625 (1986)). Our Courts have traditionally held that "the State [Education] Board has very broad statutory authority over the administration of the public school system in this State." *Heister,* 392 Md. at 152, 896 A.2d 342 (quoting *Bd. of Educ. of Prince George's County v. Waeldner,* 298 Md. 354, 359–60, 470 A.2d 332 (1984)). This is further evidenced by Md.Code (1978, 2008 Repl.Vol., 2012 Cum. Supp.), § 2–205(e) of the Education Article, which provides the State Education Board with the authority to "explain the true intent and meaning of the [statute's] provisions[.]" *Montgomery County Educ. Ass'n,* 311 Md. at 309, 534 A.2d 980.

We have generally described the State Education Board's authority as follows:

We think it beyond question that the power of visitation vested in the State [Education] Board is one of general control and supervision; it authorizes the State [Education] Board to superintend the activities of the local boards of

education to keep them within the legitimate sphere of their operations, and whenever a controversy or dispute arises involving the educational policy or proper administration of the public school system of the State, the State [Education] Board's visitatorial power authorizes it to correct all abuses of authority and to nullify all irregular proceedings.

*Bd. of Educ. of Montgomery County v. Montgomery County Educ. Assoc., Inc.*, 66 Md.App. 729, 739–40, 505 A.2d 905 (1986) (quoting *Zeitschel v. Bd. of Educ.*, 274 Md. 69, 81, 332 A.2d 906 (1975)) (quotations omitted).

We do recognize that the State Education Board's authority is not unfettered, as it cannot apply its power "fraudulently, in bad faith, in breach of trust, or in direct contravention of [a] statute." *Id.* at 740, 505 A.2d 905. "Decisions of a local [education] board involving a local policy or a controversy and dispute regarding the rules and regulations of the local board shall be considered *prima facie* correct, and the State [Education] Board may not substitute its judgment for that of the local board unless the decision is arbitrary, unreasonable, or illegal."[11] COMAR 13A.01.05.05(A). We acknowledge that "[i]f the State [Education] Board's interpretation or application of [a statute], in a particular situation, would clearly be contrary to the statute's plain meaning, a reviewing court must reject that interpretation." *Montgomery County Educ. Ass'n*, 311 Md. at 309, 534 A.2d 980. However, "under its visitatorial power, the "last word" or the "final decision" rests with the State [Education] Board as to

---

11. COMAR 13A.01.05.05(B) and (C) provides:

B. A decision may be arbitrary or unreasonable if it is one of more of the following:
(1) It is contrary to sound educational policy; or
(2) A reasoning mind could not have reasonably reached the conclusion the local board of local superintendent reached.
C. A decision may be illegal if it is one or more of the following:
(1) Unconstitutional
(2) Exceeds the statutory authority or jurisdiction of the local board;
(3) Misconstrues the law;
(4) Results from an unlawful procedure;
(5) Is an abuse of discretionary powers; or
(6) Is affected by any other error of law.

any dispute concerning the administration of the public school system...." *Bd. of School Comm'rs of Baltimore City v. James*, 96 Md.App. 401, 418, 625 A.2d 361 (1993) (quoting *Waeldner*, 298 Md. at 361, 470 A.2d 332). *See also* Education Article § 2–205(e)(2) and (3) ("The Board shall decide all controversies and disputes under these provisions[, and] [t]he decision of the Board is final."); *New Bd. of School Comm'rs of Baltimore City v. Pub. School. Adm'rs & Supervisors Ass'n of Baltimore City*, 142 Md.App. 61, 70–71, 788 A.2d 200 (2002) (additional citations omitted); *Montgomery County Educ. Ass'n*, 311 Md. at 310, 534 A.2d 980; *McIntyre v. Bd. of Educ.*, 55 Md.App. 219, 224, 461 A.2d 63 (1983); *Bd. of Educ. v. McCrumb*, 52 Md.App. 507, 514, 450 A.2d 919 (1982) ("[T]he Maryland State Board of Education then is vested with the last word on matters of educational policy or the administration of the system of public education") (additional citation omitted); *Resetar v. State Bd. of Educ.*, 284 Md. 537, 556, 399 A.2d 225 (1979) ("[T]he totality of the various statutory provisions concerning the State [Education] Board quite plainly ... invests the State [Education] Board with the last word on any matter concerning educational policy or the administration of the system of public education.") (internal quotation omitted) (additional citation omitted); *Wilson v. Bd. of Educ. of Montgomery County*, 234 Md. 561, 565, 200 A.2d 67 (1964) (additional citations omitted).

## DISCUSSION

**Whether The State Education Board Erred In Determining That The Allegany Education Board's Decision Did Not Violate Education Article § 4–121 And Was Not Arbitrary And Capricious.**

 Before we analyze the statute, we explore the Court of Appeals's discussion in *Chesapeake Charter, Inc. v. Anne Arundel County Bd. of Educ.*, 358 Md. 129, 137–38, 747 A.2d 625 (2000) regarding the hierarchy of Maryland's education system, explaining as follows:

The State government structure for primary and secondary education is the State Department of Education, created by [Education Article] § 2–201 "as a principal department of the State government." The Department consists of (1) the State Board of Education, which is the head of the Department [ (Education Article] § 2–102) . . ., (2) the State Superintendent of Schools, who is a member of the Governor's Executive Council [ (Education Article] § 2–303(d)) and serves, in essence, as the chief executive officer of the Department, and (3) the other professional, administrative, and clerical employees employed by the Department, who are State government employees for budgetary and personnel purposes.

\* \* \*

For each county, the [General Assembly] has created a county department of education that, in structure, generally mirrors that of the State Department of Education. The county school board is the head of the county department and is responsible for administering, in the county, the supervening State policy determined by the State Board of Education, in accordance with State Board's directives. [12] There is, as well, a county superintendent, who is the executive officer of the county board and, in essence, the chief executive office of the county department. . . .

The circumstances regarding cross-boundary school enrollment for non-resident students are governed by Education Article § 4–121(b) and (c), which provides in pertinent part:

(b) *School to be free.*—A school that is in one county and near the boundary of an adjoining county is free to the children of the adjoining county as provided in this section.

---

**12.** Pursuant to Md.Code (1978, 2008 Repl.Vol., 2012 Cum Supp.), § 4–101 of the Education Article provides:

(a) *Control of educational matters.*—Educational matters that affect the counties shall be under the control of a county board of education in each county.

(b) *Promotion of schools.*—Each county board shall seek in every way to promote the interests of the schools under its jurisdiction.

(c) *Joint provision for school support and attendance policies;* ...—(1) The county boards of the two counties may:

(i) Provide jointly for the maintenance and support of the jointly attended school in the receiving county; and

(ii) Determine the geographical attendance areas and other attendance policies of the two counties for all jointly attended schools in the receiving county.

(2) If the two county boards fail to agree on a geographical attendance area or attendance policy, the State Superintendent shall decide the matter.

Subsection (d) of Education Article § 4–121 addresses funding, which states:

(d) *Funding.*—(1) For each fiscal year, the sending county shall pay the receiving county, for each student who resides in the sending county and who attends a public school in the receiving county, an amount equal to the lesser of:

(i) The local current expense per student in the sending county; or

(ii) The local current expense per student in the receiving county.

(2) If the local current expense per student for the sending county is less than the local current expense per student for the receiving county, the difference, plus the appropriate State share of the foundation program, for each student who resides in a sending county who attends a public school in the receiving county, shall be:

(i) Paid by the State to the receiving county; and

(ii) Provided for in the appropriation to the State Board.

We must examine whether Education Article § 4–121(b) provides an unfettered right to free public education where children in one county are so near to the boundary of an adjoining county, and specifically, whether Allegany County is obliged to continue to finance the educational expenses of its Little Orleans residents to attend schools in Washington County. However, through analyzing this issue, we also intend to determine whether Education Article 4–121(c) compels

an agreement between adjoining counties and whether the statute provides affected students and parents the right to enforce such an agreement.

Appellants assert that Education Article § 4–121 "provides that students affected by these particularly unique geographic circumstances **must** be afforded the ability to attend a school that is more "near" to their communities in a neighboring county free of charge as part of their right." (emphasis added) (footnote omitted). The Allegany Education Board maintains that Education Article § 4–121 is discretionary because it "clearly indicates that the school boards in the adjacent counties **may provide** for an agreement concerning cross-county attendance." (emphasis added) (internal quotations omitted) (underline omitted). The Allegany Education Board also avers that the statute neither provides students nor their parents the right to compel counties to enter into an agreement regarding cross-boundary school attendance.

A question regarding statutory interpretation is a legal question, which we review *de novo*. *Harvey v. Marshall*, 389 Md. 243, 257, 884 A.2d 1171 (2005) (citing *Mohan v. Norris*, 386 Md. 63, 66–67, 871 A.2d 575 (2005)); *see also Davis v. Slater*, 383 Md. 599, 604, 861 A.2d 78 (2004) (Maryland appellate courts review issues *de novo* to decide if the circuit court was legally correct in its interpretations of the Maryland Code.). The primary goal of statutory interpretation is to ascertain and effectuate the intention of the General Assembly, *Beka Indus. v. Worcester County Bd. of Educ.*, 419 Md. 194, 217, 18 A.3d 890 (2011) (citing *Stern v. Bd. of Regents, Univ. Sys. of Maryland*, 380 Md. 691, 720, 846 A.2d 996 (2004)), as well as " 'the ends to be accomplished, or the evils to be remedied by a particular provision[.]' " *Whitley III., et al. v. Maryland State Bd. of Elections, et al.*, 429 Md. 132, 149, 55 A.3d 37 (2012) (citing *Barbre v. Pope*, 402 Md. 157, 172, 935 A.2d 699 (2007)).

To construe the intent, we start by observing the plain meaning of the statutory terminology, *Bornemann v. Bornemann*, 175 Md.App. 716, 724, 931 A.2d 1154 (2007) (citing

*Reier v. State Dept. of Assessments and Taxation,* 397 Md. 2, 26, 915 A.2d 970 (2007)), so that " 'no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless or nugatory[.]' " *Whitley,* 429 Md. at 149, 55 A.3d 37. "... When the plain meaning is clear and unambiguous, and consistent with both the broad purposes ... of the provision being interpreted ...," we end our search, *Assateague Coastkeeper et al. v. Maryland Dep't of the Environment,* 200 Md.App. 665, 709, 28 A.3d 178 (2011), *cert. denied* 424 Md. 291, 35 A.3d 488 (2012) (quoting *Wal Mart Stores, Inc. v. Holmes,* 416 Md. 346, 359, 7 A.3d 13 (2010)) (quoting *Schlosser v. Uninsured Employers' Fund,* 414 Md. 195, 203–04, 994 A.2d 956 (2010)), except in the "interest of completeness." *See Whitley,* 429 Md. at 155, 55 A.3d 37. If the language is ambiguous and susceptible to more than one meaning, we examine intent from the legislative history, as well as "case law, purpose, structure, and overarching statutory scheme in aid of searching for the intention of the legislature." *Id.* at 149, 55 A.3d 37. *See also Bornemann,* 175 Md.App. at 724, 931 A.2d 1154 (citing *Evans v. State,* 396 Md. 256, 341, 914 A.2d 25 (2006); *Allstate Ins. Co. v. Kim,* 376 Md. 276, 290, 829 A.2d 611 (2003)). The overall purpose, legislative history, and the statute's language is analyzed in its entirety to elucidate the inconsistencies and ambiguities. *Assateague Coastkeeper,* 200 Md.App. at 709, 28 A.3d 178 (quoting *Wal Mart Stores, Inc. v. Holmes,* 416 Md. 346, 359, 7 A.3d 13 (2010)) (quoting *Schlosser v. Uninsured Employers' Fund,* 414 Md. 195, 203–04, 994 A.2d 956 (2010)).

Furthermore, " '[w]hen faced with a problem of statutory construction, [the Court of Appeals] [has] show[n] great deference to the interpretation given the statute by the officers or agency charged with its administration.' " *Jordan Towing, Inc. v. Hebbville Auto Repair, Inc.,* 369 Md. 439, 459, 800 A.2d 768 (2002) (quoting *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965)). The Court of Appeals has stated:

> [A] court's task on review is not to substitute its judgment for the expertise of those persons who constitute the administrative agency. Even with regard to some legal issues, a degree of deference should often be accorded the position of

the administrative agency. Thus, an administrative agency's interpretation and application of the statute which the agency administers should ordinarily be given considerable weight by reviewing courts.

*Assateague Coastkeeper,* 200 Md.App. at 709, 28 A.3d 178 (quoting *Headen v. Motor Vehicle Admin.,* 418 Md. 559, 570, 16 A.3d 196 (2011)) (quoting *Bd. of Physician Quality Assurance v. Banks,* 354 Md. 59, 68, 729 A.2d 376 (1999)) (quotations omitted).

We first examine the syntax of the statute, specifically the word "may." Our Courts have traditionally stated that " '[w]hen a legislative body commands that something be done, using words such as "shall" or "must," rather than "may" or "should," we must assume, absent some evidence to the contrary, that it was serious and that it meant for the thing to be done in the manner it directed.' " *Hammersla v. State,* 184 Md.App. 295, 313, 965 A.2d 912 (2009) (quoting *Thanos v. State,* 332 Md. 511, 522, 632 A.2d 768 (1993)). *See also Perez v. State,* 420 Md. 57, 63–64, 21 A.3d 1048 (2011) (" 'When the [General Assembly] commands that something be done, using words such as 'shall' or 'must' rather than 'may' or 'should,' the obligation to comply with the statute or rule is mandatory.' ") (additional citations omitted); *Walzer v. Osborne,* 395 Md. 563, 580, 911 A.2d 427 (2006) (additional citations omitted); *State v. Green,* 367 Md. 61, 82, 785 A.2d 1275 (2001) (additional citations omitted).

As demonstrated, Courts often perceive that "may" is synonymous with "should," so we examine Judge Kathryn Graeff's analysis in *Miller v. City of Annapolis Historic Pres. Comm'n,* 200 Md.App. 612, 639–40, 28 A.3d 147 (2011), where regulatory guidelines pertaining to fiberglass building materials were examined. Judge Graeff explained the difference between "should" and "shall" as follows:

In comparing the definitions of should versus shall, it becomes evident that their meanings, while similar, are indeed distinct. Should is used to express duty, obligation, necessity, propriety, or expediency. WEBSTER'S THIRD NEW

INTERNATIONAL DICTIONARY 2104 (3rd ed. unabridged 1993). Shall is used to express a command or exhortation. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY at 2085. *Should, while definitely strongly encouraging a particular course of action, is permissive.* Shall requires a particular course of action and accordingly, is mandatory.

*Id.* at 639, 28 A.3d 147 (emphasis added in original) (additional citations omitted).

As previously indicated, the General Assembly's sentence structure incorporated that "[t]he county boards of the two counties **may**" choose to divide the funding of non-resident students, as well as decide educational policies. As denoted above, we surmise that the General Assembly desired to "confer[ ] substantial leeway" on the boards, *Haynes v. City & County of San Francisco*, 688 F.3d 984, 987 (9th Cir.2012), and permit the boards to exercise their own discretion in determining cross-boundary school attendance. Education Article § 4–121 permits residents who reside in one county to enroll in an adjoining county's school, provided that the two adjoining counties reached an accord relating to joint attendance of the non-residents. Accordingly, we determine that Education Article § 4–121's plain meaning is clear and unambiguous because the language is not susceptible to more than one meaning.

Nevertheless, to ensure that we have discerned the General Assembly's intent, we examine the legislative history and other provisions of the statute. *See Whitley*, 429 Md. at 155, 55 A.3d 37 (" 'Even when the language of a statute is free from ambiguity, in the interest of completeness[,] we may . . . explore the legislative history of the statute under review . . . [.][T]he resort to legislative history is a confirmatory process; it is not undertaken to contradict the plain meaning of the statute.' ") (quoting *Mayor & City Council of Balt. v. Chase*, 360 Md. 121, 131, 756 A.2d 987 (2000)).

The origin of Education Article § 4–121 is found in Senate Bill 222 of the 1978 General Assembly. 1978 Md. Laws, ch.

22. During this time, the statute was codified as Education Article § 4–120, as opposed to § 4–121, providing that:

(c)(1) The county boards of the two counties may:

(i) Provide jointly for the maintenance and support of the jointly attended school in the receiving county; and

(ii) Determine the geographical attendance areas and other attendance policies of the two counties for all jointly attended schools in the receiving county.

(2) If the two county boards fail to agree on a geographical attendance area or attendance policy, the State Superintendent shall decide the matter.

S.B. 819, 384th Gen Assem. Reg. Sess. (Md.1980).

In 1980, Senate Bill 819 was introduced, concerning residents in Somerset County attending school in Worcester County. *Id.*

42 [c]hildren who live[d] in Somerset County live[d] within 2 miles of a school in Worcester County but 15 miles for the closest school in their own county. They had been allowed to attend school in Worcester County until the Board of Education in Somerset County recently ruled otherwise.

SENATE FINANCE COMMITTEE, FLOOR REPORT, S.B. 819, 1980 General Assembly (Md.1980).[13]

Senator Long of the 1980 General Assembly sponsored Senate Bill 819 "[t]o allow an exemption to the current Somerset County Board of Education requirement that all children in Somerset County attend school in that county. This would allow [the] small number of children near Pocomoke City to attend school in Worcester County." *Id.* The introduced section read as follows:

(3) The following provisions apply in Somerset and Worcester Counties:

(I) A student who resides in Somerset County and is presently attending school in Worcester County may continue to

---

**13.** Senate Bill 819's bill file alluded to an untitled document, which appeared to be the Senate Finance Committee's floor report.

attend school in Worcester County until graduation from high school.

(II) Brothers and sisters of students described in subparagraph (I) of this paragraph may attend those same schools until graduation from high school.

(III) When the cycle described in subparagraphs (I) and (II) of this paragraph is complete, the exception described in this paragraph will end and all new students will attend school in Somerset County, unless otherwise authorized by the Somerset County Board of Education.

Amendment to S.B. 819 (First Reading File Bill), 386th Gen. Assem., Reg. Sess., (Md.1980) (quotations omitted) (capitalization omitted) (underlines omitted). After amendments to the language, the General Assembly decided on the current reading of Education Article § 4–121(c)(3).

Recently, Delegates LeRoy Myers and Wendell Beitzel, members of the 2012 General Assembly, sponsored bills concerning Education Article § 4–121. House Bill 335, entitled "Education–Public Secondary Schools Near Boundary of Two Counties," was recommended for the following:

This bill allows a student who must travel more than 30 miles to reach the student's assigned secondary public school to attend a public secondary school in an adjoining county, if the public secondary school in the adjoining county is closer than the assigned public secondary school and the school is below 80% capacity. The State Board of Education may adopt regulations to implement the provisions of the bill.

Dep't of Legis. Servs., Fiscal and Policy Note, H.B. 335 (2012).

House Bill 1447, entitled "Education—School Attendance in Another County" provided that:

This bill allows a student to attend a public school in an adjoining (receiving) county if the county where the student resides (sending county) determines that transportation of the student to his or her assigned public school in the county is not feasible. The sending county may not be required to provide transportation of the student to a school

in the receiving county and must make an annual determination regarding the feasibility of transporting each student to a school in the sending county. A student presently attending school in a receiving county may continue to do so until graduation from high school, and a sibling of the student may attend the same school. However, after all students presently attending school in a receiving county have graduated, siblings of those students may no longer attend the school in the receiving county unless the sending county determines that transportation of the student to the assigned school is not feasible and there is an agreement between the two counties for attendance in the receiving county.[14]

Dep't of Legis. Servs., Fiscal and Policy Note, H.B. 1447 (2012). The bills were not approved by the House, and were thereby not enacted.

Appellate courts analyze the statutory scheme in its entirety and "attempt to harmonize provisions dealing with the same subject so that each may be given effect." *Henriquez v. Henriquez*, 413 Md. 287, 297–98, 992 A.2d 446 (2010) (quoting *Bowen v. City of Annapolis*, 402 Md. 587, 613–14, 937 A.2d 242 (2007)) (quoting *Kushell v. Dep't of Natural Res.*, 385 Md. 563, 576–77, 870 A.2d 186 (2005)). The Court of Appeals has further searched the "contested provisions of Maryland's ... Article[s] in the context of the statutory scheme as a whole and construe the plain language so that the various sections of the article do not conflict with one another." (*Ctr. Ins. Co. v. J.T.W.*, 397 Md. 71, 81, 916 A.2d 235 (2007)) (citing *Chow v. State*, 393 Md. 431, 443, 903 A.2d 388 (2006); *Deville v. State*, 383 Md. 217, 223, 858 A.2d 484 (2004); *Navarro–Monzo v. Washington Adventist*, 380 Md. 195, 204, 844 A.2d 406 (2004)). *See also Frey, et al. v. Comptroller of the Treasury*, 422 Md. 111, 183, 29 A.3d 475 (2011) ("[W]hen two provisions 'relate to

---

**14.** Delegate LeRoy Myers, a representative of Allegany and Washington counties, sponsored H.B. 335, along with other representatives, as well as H.B. 1447. Delegate Wendell Beitzel is a representative for Garrett and Allegany counties, and sponsored H.B. 1447.

the same subject matter, and are not inconsistent with each other, they should be construed together and harmonized where consistent with their general object and scope.' ") (additional citations omitted).

Education Article § 4–121(c) is entitled *"Joint provision for school support and attendance policies; special provisions as to Somerset and Worcester counties."* Subsection (3) provides (emphasis added):

(3) The following provisions apply in Somerset and Worcester counties:

(i) A student who resides in Somerset County and is presently attending school in Worcester County **may continue to attend** school in Worcester County until graduation from high school.

(ii) After all of the students described in subparagraph (i) have graduated, the exception described in this paragraph will end and all new students will attend school in Somerset County, unless otherwise authorized as provided in paragraph (1) of this subsection.

Possibly taking a cue from Education Article § 4–121(c)(3), it appears that the Allegany Education Board decided to provide its Little Orleans residents, who were in the 10th through 12th grades, permission to complete their high school tenure in Washington County, but not its residents from pre-kindergarten through 9th grade. Thereby, it was not unreasonable for the Allegany Education Board to believe that it would be complying with the General Assembly's intent, even when faced with the decision to terminate its agreement, in light of fiscal restraints.

We recognize that the subsections of Education Article § 4–121 cannot be considered in isolation, and that overall, must be examined in conjunction with other provisions. Md.Code (1978, 2008 Repl.Vol., 2012 Cum. Supp), § 7–101(b)(2)(i) of the Education Article provides (emphasis added):

(b) *Location.*—(1) Except as provided in § 7–301 of this title and in paragraph (2) of this subsection, each child shall attend a public school in the county where the child is

domiciled with the child's parent, guardian, or relative providing informal kinship care....

(2)(i) Upon request and in accordance with a county board's policies concerning residency, a county superintendent **may allow** a child to attend school in the county even if the child is not domiciled in that county with the child's parent or guardian.

Although we could not obtain the 1957 or 1978 origins of Education Article § 7–101, we were able to obtain House Bill 364 of the 1997 General Assembly, which was enacted to "require[ ] a child to attend a public school in the county where the child [was] domiciled with the child's parent or guardian. A county superintendent of schools may [have] provide[d] for certain exceptions." Dep't of Legis. Servs., Revised Fiscal Note, H.B. 364 (1997). Since 1997, Education Article § 7–101 has always included the "may allow" language regarding the county superintendent allowing non-resident students to enroll in an adjoining county's school. *See* H.B. 364 (Third Reading File Bill), 411th Gen Assem. Reg. Sess. (Md.1997).

As demonstrated, Education Article § 4–121's statutory language is consistent with the broad purposes of the provisions dealing with the same subject, and is clearly reflective of the General Assembly's intent. Furthermore, with the failed enactment of House Bills 335 and 1447, this is additional evidence that the recent General Assembly wanted to remain in compliance with the previous General Assembly in not compelling the county education boards to enter into agreements to require mandatory cross-boundary school enrollment. Additionally, the statute does not include any language that would provide affected students or parents with the authority to enforce such an agreement. Instead, the General Assembly provided the county education boards with discretion to decide whether they desired to allow students to attend an adjoining county's school.

In *Clinton et ux. v. Bd. of Educ. of Howard County,* 315 Md. 666, 668–69, 556 A.2d 273 (1989), the plaintiffs—parents

registered their children in a Howard County school prior to their relocation from Baltimore County to Howard County. However, as a result of unforeseen circumstances, the plaintiffs were unable to relocate. *Id.* at 669, 556 A.2d 273. Despite this, the plaintiffs' children continued their schooling in Howard County. *Id.* The defendant, the Howard Education Board ("county board"), offered the plaintiffs countless "residency" deadlines, but the plaintiffs failed to comply. *Id.* Thus, the county board attempted to discontinue the childrens' enrollment at its school. *Id.*

The plaintiffs filed an action against the county board and sought an injunction, which the trial court originally granted. *Id.* However, before the trial court issued its amended order, the county board moved to dismiss the complaint. *Id.* at 670, 556 A.2d 273. Thereafter, the county board filed a counterclaim for approximately $6,340, relating to the childrens' tuition. *Id.* The trial court dismissed the complaint, and ordered the plaintiffs to pay approximately $4,900. *Id.* The plaintiffs noted an appeal, and the Court of Appeals granted *certiorari* before our Court examined the issues. *Id.* at 670–71, 556 A.2d 273.

On appeal, the Court analyzed the county board's policy, which provided the following in pertinent part:

[A]ll qualified school age minor persons whose parents do not have an established bona fide residence in Howard County or those majority aged students who themselves have not established bona fide residence in Howard County shall be considered non[-]resident students. Such students may be admitted to the Howard County Public Schools; however, tuition shall be charged and paid unless waived.

*Id.* at 671, 556 A.2d 273.

The plaintiffs maintained that the Education Article offered Maryland students "free" education, and that only the General Assembly possessed the authority to implement residency requirements. *Id.* at 671–72, 556 A.2d 273. The county board averred that the Education Article provided it with discretionary power regarding educational issues. *Id.* at 672, 556 A.2d

273. The county board further alleged that Education Article § 4–121 did not afford a right for children to attend an adjoining county's public schools for free.[15] *Id.* at 673, 556 A.2d 273.

The Court analyzed a State Education Board opinion, which concerned tuition payments for non-resident students, and stated:

It is true that the State [Education] Board in dicta declared that " 'county boards of education [were] empowered to require that students attending their schools be residents of their particular county.' " [ (citation omitted) ] [ (footnote omitted) ]. A county school board's authority to exclude non[-]residents from its public schools is different, however, from the alleged authority to charge non[-]residents of the county tuition once permission has been granted to attend a public school within that district.

*Id.* at 675, 556 A.2d 273.

After examining other provisions of the statute, the Court determined that the State Education Board possessed "visitatorial power" to rule on educational matters, such as nonresident tuition. *Id.* at 678–79, 556 A.2d 273. Accordingly, because the State Education Board never determined the issues, the Court vacated the trial court's ruling. *Id.* at 679, 556 A.2d 273.

Beyond *Clinton,* we have not found any Maryland cases concerning cross-boundary school attendance. While it is one of first impression in Maryland, other jurisdictions have considered whether their statutes require county education boards to allow students to attend schools in a non-resident school district. Currently, we perceive that Wisconsin is the leading jurisdiction that has considered this issue, so we examine its statute and case law.

---

**15.** In 1989, the current Education Article § 4–121 was codified as Education Article § 4–120, which was the statute that the county board used to establish its argument. *See Clinton,* 315 Md. at 672, 556 A.2d 273.

In *School Dist. of Stockbridge v. Evers,* 330 Wis.2d 80, 792 N.W.2d 615, 616 (Ct.App.2010), the Wisconsin Court of Appeals determined "whether a resident school district may limit the number of student transfers to non[-]resident school districts under [the statute] or, in the alternative, limit the number of transfers via an exercise of its general authority. . . ." The plaintiffs—parents filed for administrative review with the superintendent against the defendant—school district ("school district") when it denied their childrens' applications to attend school in an adjoining county. *Id.* at 617. The school district averred that funding the students to a non-resident district placed an undue financial burden on it. *Id.* at 620. The superintendent reversed the school district's ruling, stating that its decision was "arbitrary and unreasonable." *Id.* at 617 (citation omitted). The school district filed a petition for judicial review, and the trial court affirmed. *Id.* at 618.

The Wisconsin statute provided in pertinent part that " '[a] pupil may attend a public school [ . . . ] in a non[-]resident school district under this section.' " *Id.* On appeal, the Wisconsin Court of Appeals noted that the only reasons that its legislature offered to enforce a limitation on the number of students who applied for permission to attend an out-of-county school was (1) racial balance and (2) a financial burden regarding special education services only. *Id.* at 621. The statute did not, however, provide for an exception relating to the entire district's financial well-being. *Id.* Therefore, although the Court acknowledged possible financial concerns, it was not a statutory reason to deny open enrollment applications for non-resident students. *Id.* at 622. The Court affirmed the superintendent's ruling. *Id.*

In *Johnson v. Burmaster,* 307 Wis.2d 213, 744 N.W.2d 900, 902 (Ct.App.2007), a virtual charter school was established in Northern Ozaukee, Wisconsin. Children from across the state registered, but were taught in their homes by means of internet and postal mail. *Id.* The virtual school was financed via "open-enrollment transfer payments" from the students' residential districts to the defendant, Northern Ozaukee's

school district. *Id.* The plaintiffs, individual citizens and an education council, filed a complaint against the Northern Ozaukee school district, alleging that operating the virtual school was a violation of Wisconsin's statute. *Id.* at 903. Both parties filed their respective motions for summary judgment. *Id.* at 903–04. The trial court granted the defendant's motion, and the plaintiffs appealed. *Id.* at 904.

On appeal, the Wisconsin Court of Appeals examined "whether a non[-]resident pupil enrolled in [the virtual school] trigger[ed] the open-enrollment statute's provisions, including a shift in funding from the resident school district to the Northern Ozaukee [s]chool [d]istrict." *Id.* at 906. To determine this issue, the Court researched the statute, which allowed a student to " 'attend a public school [ ... ] in a non[-]resident school district.' " *Id.* The parties disputed the meaning of "attend," arguing whether it constituted "physical" or "non-physical" presence. *Id.* The Court determined that although the students "attended" the virtual school, they engaged in online learning and resources from their homes. *See id.* Accordingly, the Court reversed the grant of summary judgment, and ordered the trial court to declare that the defendants violated the education statute and to "enjoin [the education department] from making pupil transfer payments based upon non[-]resident students enrolled in [the virtual school]." *Id.* at 909.

In *McMorrow v. Benson*, 238 Wis.2d 329, 617 N.W.2d 247, 251–52 (Ct.App.2000), the plaintiff—student desired to finish the last two years of his secondary education in a non-resident school district. He submitted his application to the non-resident district, but it was denied. *Id.* at 252. The plaintiff appealed to the defendant-superintendent ("superintendent"), who affirmed the school district's decision because of class size guidelines. *Id.* The plaintiff then filed a petition for judicial review to the trial court. *Id.* The trial court reversed, and found that there was no substantial evidence that there was an issue with available space, and concluded that the superintendent's decision was arbitrary and capricious. *Id.* The superintendent then noted an appeal. *Id.*

On appeal, the Wisconsin Court of Appeals discussed the class sizes of the grade that the plaintiff sought, and found that two of the six curriculum courses were beyond the maximum capacity. *Id.* at 254. However, the Court noted that this did not hinder the school district's decision to permit other students to continue their education at the non-resident school. *Id.* The superintendent argued that pursuant to the statute, current non-residents received first priority. *Id.* The Court disagreed, stating that the statute provided that, "when there are more applicants *than spaces available,* the pupils accepted shall be determined on a random basis." *Id.* at 255 (citation omitted) (emphasis in original). Because the statute was clear and unambiguous, the Court reversed the superintendent's ruling, indicating that "it [was] arbitrary and unreasonable to make an exception to the class size guidelines to admit three students into the 11th grade, but deny [the plaintiff's] admission without a valid reason." *Id.*

In addition to examining cases in Wisconsin, we also analyze cases in other jurisdictions. In *Storm M.H. ex rel. McSwain v. Charleston County Bd. of Trustees,* 400 S.C. 478, 735 S.E.2d 492, 494 (2012), a student, a resident of Berkeley County, South Carolina, applied for admission into a prestigious magnet school in Charleston County, South Carolina. The student was accepted, but was required to establish residency to comply with school policy. *Id.* The plaintiff—mother contacted the Charleston County school district's general counsel, and alleged that the following South Carolina law permitted the student to attend the magnet school, stating (spacing added):

Children ... shall be entitled to attend the public schools of any school district, without charge, only if qualified under the following provisions of this section:

(a) Such child resides with its parent or legal guardian;

(b) The parent or legal guardian, with whom the child resides, is a resident of such school district; or

(c) The child owns real estate in the district having an assessed value of three hundred dollars or more; and

(d) The child has maintained a satisfactory scholastic record in accordance with scholastic standards of achievement . . .; and

(e) The child has not been guilty of infraction of the rules of conduct promulgated by the trustees of such school district. . . .

*Id.* at 495, n. 3. The general counsel agreed, but indicated that the plaintiff needed to purchase land in the student's name to fully comply with all of the elements. *Id.* Despite this, the defendant, the district's board of trustees ("trustees board"), held otherwise, stating that Charleston County residency was required. *Id.*

The plaintiff filed a complaint for declaratory judgment, and the trustees board filed its motion to dismiss. *Id.* at 496. The trial court concluded that the trustees board's "residency" policy was unlawful as a violation of state law. After both parties noted their respective appeals, the student purchased property in Charleston County. *Id.*

On appeal, the trustees board maintained that state law provided it with discretion to govern educational matters, including school attendance and admission guidelines. *Id.* at 497. The plaintiff avowed that the "statutes entitle[d] a child to attend a public school, without charge, if the child either reside[d] or own[ed] real estate within the school district in which the school [was] located." *Id.* The Court determined that:

This "resident only" criterion [ran] afoul of [the state statute] because any child meeting the threshold established by this provision, either as a resident or a property owner of the subject school district, [was] entitled to attend that district's schools. Thus, while we agree with the [b]oard that [the statute] [did] not necessarily confer a child the right to attend a particular school within a school district, [the Charleston County school district] may not utilize this provision to revoke admission to a child qualifying to attend a district's school merely because a child qualifie[d] to

attend school in the district by virtue of property ownership rather than residence. . . .

*Id.* at 489. Because the student comported with all the abovementioned elements and was accepted into the magnet school, the Court affirmed the grant of declaratory judgment in favor of the plaintiff. *Id.* at 499–500

In *Pat v. Stanwood School Dist.*, 41 Wash.App. 707, 705 P.2d 1236, 1237 (1985), the plaintiffs—parents filed an action against the defendant—school district ("school district") because it denied the request for their child to attend an adjoining county's school. An administrative law judge reviewed the decision *de novo*, and concluded that the school district should have granted the release. *Id.* at 1238. However, the superintendent ignored the administrative law judge's recommendation, and denied the release because it surmised that the plaintiffs failed to comply with the county's policy requirements. *Id.* The policy stated:

1. There exists a special hardship or detrimental condition of a financial, educational, safety or health nature affecting the student or the student's immediate family, provided that the hardship or condition is likely to be significantly alleviated as a result of the transfer.

2. Students who move into the district in mid-year may finish the school year in their former district.

3. Students in grades eleven and twelve who move into the district may complete their high school program in the former district.

*Id.* at 1237. The plaintiffs filed a petition for judicial review, and the trial court affirmed. *Id.* at 1238.

On appeal to the Washington Court of Appeals, that Court discussed the plaintiffs' lifestyle and family affairs. *See generally id.* at 1237–38. The student resided near the boundary line of both counties. *Id.* at 1237. She "would have to spend an hour and a half longer on the bus each day if she attended school in [her residential county] than if she went to school [in the adjoining county]." *Id.* The mother did not drive, and the plaintiffs were apprehensive regarding the student traveling

by bus. *Id.* at 1238. "If [the student went] to school in [her residential county,] it [would] be difficult for her father to spend much time with her or to assist her with her homework." *Id.* Furthermore, the plaintiffs had relatives in the nearby county who also attended the student's desired school. *Id.*

As a result, the Court concluded that:

[N]one of these problems individually would constitute a special hardship or detrimental circumstance. Taken in the aggregate, however, we believe the record establishe[d] that a "special hardship or detrimental condition [ . . . ] affecting the student or the student's immediate family [ . . . ] may [have] likely be[en] significantly alleviated as a result of a transfer. [ (citation omitted) ]. The superintendent erred in denying the [plaintiffs'] request for release. . . . "

*Id.* at 1241.

In *Ramsdell v. North River School Dist. No. 200*, 104 Wash.2d 264, 704 P.2d 606, 608 (1985), the plaintiffs—parents requested a release for their children to attend a non-resident secondary school. The plaintiffs claimed that their residential school was inadequate, and that their children could be exposed to diverse viewpoints in the adjoining county's school. *Id.* The defendant-county board ("county board") denied the request, indicating that " 'the [b]oard feels your case does not meet the state or local school guidelines for releases, nor can it be considered a hardship case.' " *Id.* The plaintiffs appealed, and the administrative law judge found that a more prestigious educational curriculum did not establish "special hardship or detrimental condition." *Id.* Again, the plaintiffs appealed, and the superintendent affirmed. *Id.*

The plaintiffs sought judicial review, and the trial court reversed the superintendent's ruling, finding that even though the plaintiffs failed to establish "hardship," the plaintiffs' children should attend the schools which met their best educational interest. *Id.* at 609. The county board appealed, and the Washington Court of Appeals transferred the action to the Washington Supreme Court. *Id.*

The plaintiffs averred that "there [was] a state granted constitutional right for [their children] to attend [the non-resident school]." The county board nevertheless contended that the resident school was a fully-certified school district, and that the plaintiffs failed to establish their *prima facie* case. *Id.* The Washington Supreme Court analyzed its statute, providing:

[S]chool district boards of directors may, in receipt of reasonable compensation, make agreements with non[-]resident parents for their children to be released to the district's schools. If the school district boards deny this requested release, the parents must appeal to the Superintendent. . . .

*Id.* at 610. The Court indicated that "without concrete evidence of inadequateness, special need or unique circumstances, we decline to rule that disparity among school districts entitles parents to transfer their children into different school districts." *Id.* at 611. Accordingly, the Court determined that the trial court erred in its ruling, and reinstated the superintendent's decision. *Id.*

In *Cord–Charlotte School Dist. No. 8 v. Independence County Bd. of Education,* 271 Ark. 217, 608 S.W.2d 12 (1980), *aff'd Newark School Dist. et al. v. Cord–Charlotte School Dist. No. 8 et al.,* 278 Ark. 110, 644 S.W.2d 253 (1983), a county education board suggested that two unincorporated communities' schools, Cord Elementary School and Charlotte High School, in Independence County, Arkansas be consolidated. As a result of the closure of the schools to construct a larger facility, the parents desired to register their children elsewhere. *Id.* In 1979, the Newark, Arkansas school district ("Newark district") permitted Cord–Charlotte, Arkansas residents to attend school in its district. *Id.* As a result, the plaintiff, the Cord–Charlotte school district ("Cord–Charlotte district"), sought an injunction from an Arkansas district court, requesting that the court prohibit the Newark district from accepting its residents for school attendance. *Id.* at 12–13. While this case was pending, the parents received permission from the defendant, the Independence County school

board ("county board"), to allow their children to enroll in Newark. *Id.* at 13. Thereafter, the district court transferred the case to an Arkansas trial court, who affirmed the county board's decision. *Id.* The Cord–Charlotte district appealed to the Arkansas Supreme Court. *Id.*

The Arkansas Supreme Court examined a state statute, which read:

> From and after the passage of this act (March 3, 1937) no county court (county board of education [1]) shall make an order transferring any school child or children from one (1) district to another until and unless the consent of the Board of Directors of the district to which such child or children are sought to be transferred has been secured in writing, such written consent to be filed in the office of the [c]ounty [c]lerk or the county from which such child or children are to be transferred.

*Id.* Predicated on the statute, the Court concluded that each district's approval was needed to enforce the acceptance of non-resident students in Newark county schools, so the Court affirmed the injunction. *See id.* at 14.

In addition to state law, we researched federal law that discussed cross-boundary school enrollment as it relates to the instant case. In *Rogowski v. New Hartford Cent. School Dist.*, 730 F.Supp. 1202, 1206 (N.D.N.Y.1990), *aff'd* 914 F.2d 240 (2nd Cir.1990), the United States District Court for the Northern District of New York ("New York District Court") determined whether the plaintiff—student had a property right in continuing her education in a non-resident school district. As a result of juvenile delinquency matters, the plaintiff relocated from Utica, New York to New Hartford, New York to reside with a relative. *Id.* at 1203. During her ninth grade year, the plaintiff enrolled in a New Hartford school, and visited her parents during weekends, school vacations, and throughout the week. *Id.* At the commencement of her tenth grade year, the school's faculty challenged the plaintiff's residence. *Id.* at 1203–04. After several inquiries,

the faculty informed the plaintiff that her enrollment was terminated because of her "nonresidency" status. *Id.* at 1204.

The plaintiff filed an action in the trial court, and it issued an order that required the New Hartford school to continue her enrollment until the defendant, the Hartford Education Board ("county board"), held a hearing. *Id.* Despite the plaintiff's submission of exhibits and testimony during the hearing, the county board determined that she was not a resident. *Id.* Neither party filed for administrative review, but the plaintiff again challenged the county board's determination in the trial court. *Id.* The trial court held that the county board's determination was arbitrary and capricious, and vacated its ruling. *Id.* at 1204–05.

Thereafter, the plaintiff filed a complaint in the New York District Court, alleging a deprivation of property rights. *Id.* at 1205. The county board filed a motion for summary judgment, which the New York District Court partially granted. *Id.* The Court discussed the state statute, which provided:

[A] person over five and under twenty-one years of age who has not received a high school diploma is entitled to attend the public schools maintained in the district in which such person resides without the payment of tuition, [ (citation omitted) ], and that [n]on [-]residents of a district [ ... ] may be admitted into the school or schools of a district [ ... ] upon the consent of the [ ... ] board of education, upon terms prescribed by such [ ... ] board[.]

*Id.* at 1205–06. After analyzing the statute, the Court noted that the plaintiff improperly interpreted New York law because it did not provide her with an unrestricted right to enroll in any New York public school. *Id.* at 1206. Furthermore, the New York legislature purposefully provided the local education boards with the authority to enforce residency requirements, as well as the power to control the policies relating to the admittance of nonresident students. *Id.* Accordingly, the Court concluded that the plaintiff did not possess a property right to attend school in New Hartford, and

granted the county board's motion for summary judgment. *Id.* at 1206–07.

After analyzing our sister states who have discussed the issue, we acknowledge that Wisconsin, Washington, New York, and Arkansas have either incorporated permissive language by the means of using "may" into their statutes, and/or required the county education boards' or school districts' consent before a non-resident could register for an out-of-county school.

 In the instant case, the Allegany Education Board closed one of its schools, and consolidated those students into nearby institutions. It responded to the affected parents' concerns, so it entered into an agreement with the Washington Education Board, permitting its Little Orleans residents to receive their education at a Washington County school, which was in close proximity to the Little Orleans community. However, after longterm compliance with the agreement, the Allegany Education Board decided to terminate the contract because of a setback concerning budgetary and financial resources.

Appellants contend that because their children were highly impacted by Allegany Education Board's decision, Education Article § 4–121 provides that the students have the right to attend a school in closer proximity to their residences. We disagree. As we previously indicated, Education Article § 4–121 provides that county education boards of the two counties **may** offer joint maintenance and support, as well as determine the policies regarding cross-boundary school enrollment. As a result of this language, the General Assembly did not require or command that the county boards perform these activities. If the General Assembly wanted to oblige the county boards to enter into arrangements, it would have incorporated mandatory language, such as "shall" or "must." Instead, the General Assembly provided the county boards with discretion and authority regarding allowing students to obtain schooling in non-residential educational institutions.

We do recognize the terrain and roadways in the northwestern part of Maryland may cause some concern regarding travel issues, as appellants allege that "it is anticipated that the Little Orleans students would be bussed for up to one hour and five minutes each way." However, the Supervisor of Transportation, Jay Walbert, provided a signed affidavit that the express bus ride time from Little Orleans to Fort Hill High School and Washington Middle School in Allegany County was recorded at thirty-five minutes. From Little Orleans to Washington County's Hancock Middle and High School, the transportation staff recorded a time of twenty-two minutes. Thereby, there was only a thirteen minute difference regarding the transportation between attendance in Allegany County schools and Washington County schools.

Appellants, similar to the parents in the *Pat* case, are also concerned that the travel distance and time will affect the students' participation in after school programs, homework, and studying. However, we note that not every parent chose to permit their children to attend school in Washington County during the impending consolidation. Many opted to send their children to an Allegany County school. Thus, we perceive that transporting the children and having them return home in a timely fashion is plausible. Furthermore, it is not unreasonable to believe that some of those children engage in extracurricular activities and perform their homework assignments. Thus, these concerns regarding driving distance and participation in after school activities are matters that other Allegany County parents confront during any given school day.

We conclude that the Allegany County Board acted in good faith by permitting the tenth to twelfth grade students to continue their education until graduation. We also perceive that Mr. Cox's correspondence regarding the termination of the decade long agreement was a good faith effort to continuously inform the parents of the termination of the agreement. Although appellants surmise otherwise, it was not unreasonable that Allegany County Public Schools encountered financial setbacks and loss of state revenues with the economical

issues that our state and country have faced over the past years. Therefore, we agree with the Allegany County Board that "it would be patently unreasonable to conclude that the school choice option should be etched in stone and remain in perpetuity just because one board of education made a decision many years ago to provide school choice under the circumstances that existed at that time. The argument of the [a]ppellants does not take into consideration the passage of time and the fact that the local board is now presented with a different set of facts and influences to guide its decision." Hence, the State Education Board's conclusion was not contrary to law, arbitrary, or capricious. Accordingly, we affirm its determination, as well as the trial court's ruling.

**JUDGMENT OF THE CIRCUIT COURT FOR ALLEGANY COUNTY IS AFFIRMED. COSTS TO BE PAID BY APPELLANTS.**